Revised December 3, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 97-11392**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**RICARDO AVILEZ-REYES,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
for the Northern District of Texas

---

November 10, 1998

Before REYNALDO G. GARZA, JONES, and DEMOSS, Circuit Judges.

DEMOSS, Circuit Judge:

Ricardo Avilez-Reyes ("Avilez-Reyes") appeals his sentence of 180 months imprisonment, arguing that the district judge committed reversible error by failing to recuse himself from the case before sentencing was to occur. For the reasons that follow we vacate Avilez-Reyes' sentence and remand for resentencing before a different district judge.

## I.

On July 18, 1997, Avilez-Reyes pleaded guilty before United States District Judge John McBryde to the crime of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. On October 9, 1997, roughly two weeks before sentencing was scheduled to occur, Avilez-Reyes moved Judge McBryde to recuse himself from the case. He brought the motion under 28 U.S.C. § 455(a) based on the fact that his attorney, Public Defender Paul D. Stickney ("Stickney"), had testified against Judge McBryde only one month earlier in judicial disciplinary proceedings before a special investigatory committee of the Fifth Circuit Judicial Council. Judge McBryde subsequently denied the motion and sentenced Avilez-Reyes to 180 months imprisonment.[1] Avilez-Reyes, who appeals only his sentence in this appeal, asks this Court to remand the case for resentencing before a different district judge based on Judge McBryde's refusal to recuse. We accede to his request.

## II.

Avilez-Reyes contends that Judge McBryde abused his discretion and committed reversible error by refusing to grant his motion for a recusal under 28 U.S.C. § 455(a). He bases that claim on the contention that his case became infected with the appearance of

---

[1] The applicable guidelines range for Avilez-Reyes under the United States Sentencing Guidelines was 168 to 210 months.

impropriety once Stickney, his attorney, testified against Judge McBryde in the Fifth Circuit Judicial Council proceedings. We agree with that contention.

Section 455(a) requires a judge to stand recused "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). As the goal of § 455(a) "is to exact the appearance of impartiality," recusal may be mandated even though no actual partiality exists. *Hall v. Small Business Admin.*, 695 F.2d 175, 178 (5th Cir. 1983). The standard by which we judge recusal is an objective one. If a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality," then recusal is warranted. *Health Services Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986), *aff'd*, 486 U.S. 847 (1988).

On the facts of this case we hold that Judge McBryde abused his discretion and reversibly erred by failing to recuse himself from Avilez-Reyes' case. We conclude that a reasonable person, advised of all the circumstance of this case, would harbor doubts about Judge McBryde's impartiality. We find additional support for our decision in the unfortunate fact that on February 9, 1998, the Judicial Council of the Fifth Circuit issued an order executing a Judicial Council Order of December 31, 1997, ordering Judge McBryde not to participate in cases involving attorneys who have testified against him for a three year period. That order, which expressly

3

lists Stickney as one of the testifying attorneys, is a clear indication that our colleagues on the Judicial Council felt there would be an appearance of impropriety in Judge McBryde continuing to preside over attorneys who had so recently testified against him.

Also guiding our decision is this Court's holding in *United States v. Anderson*, No. 97-11205 (1998), a case decided at the same time as the present appeal.

As in *Anderson*, we again find that Judge McBryde committed reversible error by failing to recuse himself from Avilez-Reyes' case. We also find Avilez-Reyes' motion timely and well-taken in all other relevant respects. Accordingly, we vacate Avilez-Reyes' sentence and remand this case for resentencing before a different judge in that district.

EDITH H. JONES, Circuit Judge, dissenting:

Tony Leroy Anderson and Ricardo Avilez-Reyes, represented by the Federal Public Defender's Office, pleaded guilty, respectively, to bank robbery and possession with intent to distribute methamphetamine. Between their plea agreements and sentencing hearings, a unique event occurred. The district judge responsible for their cases was brought before a judicial conduct and disciplinary hearing convened by the Fifth Circuit Judicial Council. In that hearing, the attorneys who testified against the Honorable John McBryde were predominantly government lawyers: six current or former lawyers from the United States Attorney's Office in the Northern District of Texas, five from the Federal Public Defender's Office.[2] Because the Chief Judge of this circuit has refused to make the records of the disciplinary hearing public,[3] we do not know what testimony was presented or by whom.[4] Nevertheless, the federal public defenders who represented these defendants sought Judge McBryde's recusal from sentencing because they themselves testified against him at the hearing. The judge denied their motions. Both defendants were sentenced within the

---

[2] The attorney-witnesses against Judge McBryde are listed in McBryde's Memorandum at 8-10.

[3] See 28 U.S.C. § 372(c)(14)(C). Judge McBryde requested publication of all the proceedings, but the Chief Judge exercised his unilateral prerogative to deny that request.

[4] One member of this panel was on the Judicial Council at the time of the hearing but was not a direct participant in the hearing.

5

applicable Guidelines ranges and raise as their only appellate point the denial of recusal.

My colleagues hold that Judge McBryde should have recused and, further, that defendants' sentences are vacated. I respectfully dissent. My colleagues' interpretation of § 455(a) in these cases conflicts with our precedents and, by unnecessarily provoking more motions and requiring more recusals, will create serious problems for the efficient administration of justice in the federal courts. In addition, they engage in no analysis of the remedy, although sentencing the defendants was harmless error in these cases. Finally, their decisions unfairly pile on the punishments that have already been imposed on Judge McBryde by the Fifth Circuit Judicial Council.

**I.**

The panel's principal error is to review Judge McBryde's recusal decision only in hindsight. The defendants' recusal motions must be viewed in terms of events as the parties knew them at the time. The public defenders had testified against Judge McBryde and the disciplinary hearing was over, but no decision had yet been rendered. The potential seriousness of the proceeding was beyond dispute, but at that stage, particularly given the novelty of the proceeding, its outcome could hardly have been foreseen. There is no reason to think that Judge McBryde would have had it in for the clients of people who were testifying against him. Every

6

judge must develop a thick skin against criticism, and most judicial conduct complaints come to nought.  A reasonable person, knowing all the circumstances, would not have had reason to doubt the judge's impartiality toward these defendants.  <u>See</u> <u>In re Hipp, Inc.</u>, 5 F.3d 109, 116 (5th Cir. 1993).

The public defenders were not responsible for convening the hearing.  There is no meaningful distinction between their testimony against Judge McBryde in the hearing and lawyers' publicly questioning a presiding judge's impartiality or ability to handle a case.[5]  Yet the impact of this criticism is treated differently by the panel, apparently because it later resulted in sanctions against Judge McBryde.

The panel's unwarranted and stringent standard for recusals will hinder the effective administration of justice. Although courts must be mindful that maintaining the appearance of partiality is at least as important as its actuality, federal judges equally have a duty to sit on cases properly before them. <u>See</u> <u>In re Drexel Burnham Lambert Inc.</u>, 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."); <u>Hinman v. Rogers</u>, 831 F.2d 937, 939 (10th Cir. 1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do

---

[5] In fact, the disciplinary hearing testimony was in one regard even less threatening than garden-variety public criticisms because the proceedings were held in secret and could not be made public without Judge McBryde's consent.

so as there is for him to do so when there is."). They must not cower before heavy-handed attempts to stifle their independence by false attacks on their integrity.

The panel's opinion raises at least three sets of problems. First, these federal public defenders essentially assert that the judge could not be impartial to their clients because of what they (the lawyers) did to him, which they allege created an extrajudicial source of influence or prejudice. Does this suggest that any aggressive lawyer who faces the prospect of a trial before a judge he dislikes could file a spurious misconduct complaint against the judge, give an unflattering interview to the press, or otherwise publicly rebuke the judge, and then seek his recusal? In fact, "courts have typically rejected recusal motions based on ... a litigant's deliberate act of criticizing the judge or judicial system." United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990). The First Circuit once repeated Judge Charles Wyzanski's colorful comments on such a situation: "[I]t rather surprises me that a person has any status at the end of the first half of the game to suggest that the referee, who was qualified at the beginning, is disqualified at the middle because in the meantime the player has been cursing the referee outside of court." In re Union Leader Corp., 292 F.2d 381, 388 (1st Cir. 1961). See also 13A Charles Alan Wright et al., Federal Practice and Procedure § 3542, at 577-78 (2d ed. 1984) ("A party cannot force disqualification by attacking the judge and then claiming that

8

these attacks must have caused the judge to be biased against him ....").

Second, there is even less reason to think that a judge would react impartially to a defendant represented by the Federal Public Defender's Office. The judge knows that the client had no choice of counsel and that no significant "punishment" could be inflicted on counsel by treating the criminal defendant unfairly. Moreover, the general rule is that disqualification motions should focus on the appearance of partiality against the party, not counsel. See Davis v. Board of Sch. Comm'rs, 517 F.2d 1044, 1050, 1052 (5th Cir. 1975); see also 13A Federal Practice and Procedure § 3542, at 575-76. That rule has passed unnoticed by the majority.[6]

Third, the panel's reasoning provides no basis for believing that attorneys who testified in favor of Judge McBryde should be treated differently from those who testified against him. Partiality includes favoritism for, as well as antipathy against, a party. If a judge cannot be supposed to be impartial toward those who testified against him, how could he not be equally grateful to -- and favorably disposed toward -- any attorneys who testified on his behalf?

---

[6] The rule is a general one with exceptions. Potashnick v. Port City Constr. Co., 609 F.2d 1101 (5th Cir. 1980), for example, found the judge's prior contacts with the plaintiff's attorney justified disqualification, but it involved much more egregious circumstances than these cases.

9

The panel's holding will allow some attorneys to get unfavorable judges disqualified from their cases. Simultaneously, it will eliminate incentives for other attorneys to stand up for a judge once allegations of misconduct are lodged against him, for fear of having him disqualified from their future cases. This is nothing short of perverse and cannot be what Congress contemplated when it created § 455(a).

Where recusal could lead to so many problems and where Judge McBryde was necessarily unaware of the ultimate conclusion of the disciplinary proceeding, I would hold that it was not an abuse of discretion for Judge McBryde not to recuse.

## II.

Even if Judge McBryde's failure to recuse himself were error, it would be harmless error. My colleagues conclude summarily that the error is "reversibl[e]" in both cases. Their method ignores the Supreme Court's approval of harmless error analysis in the § 455(a) context. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862, 108 S. Ct. 2194, 2203-04 (1988) ("There need not be a draconian remedy for every violation of § 455(a).").

This court has generally applied a three-prong harmless error test after finding a § 455(a) violation. See, e.g., United States v. O'Keefe, 128 F.3d 885, 892 (5th Cir. 1997), cert. denied, 118 S. Ct. 1525 (1998); Air Line Pilots Ass'n, Int'l v. Continental

10

Airlines, Inc. (In re Continental Airlines Corp.), 901 F.2d 1259, 1263 (5th Cir. 1990). That test involves weighing "(1) the risk of injustice to the parties in this particular case, (2) the risk that denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process." O'Keefe, 128 F.3d at 891. The full analysis shows that the sentences here were harmless error.

The risk of injustice to the parties is mitigated by the appellate court's ability to review the challenged decision. Here, no abuse of discretion in sentencing is alleged, and in fact, no error at all is alleged in regard to the guilty pleas or sentences other than failure to recuse. The parties' rights were inherently protected from arbitrariness by the Sentencing Guidelines. The mere fact that the judge sentenced defendants beyond the minimum of the Guidelines ranges does not imply partiality. Given the easily articulable explanations for greater-than-minimum sentences, it cannot be said that defendants have suffered prejudice. In Anderson's case, especially, there was no hint of prejudice: the Guidelines range was narrow (only nine months' variation) and the probation officer had recommended an upward departure because Anderson carried his two-year-old son in his arms as he robbed a bank. In Avilez-Reyes's case, the Guidelines range was broader, but Avilez-Reyes was sentenced in the lower half and there was evidence to show that he had possessed more than 1.7 kilograms of methamphetamine. Allowing these sentences to stand creates no

11

significant risk of injustice to the parties in these cases.

There is also no risk of injustice in future cases because, if the Judicial Council's order stands, Judge McBryde is required to recuse from cases involving these attorneys for three years. Furthermore, assuming, as the majority does, that there is a § 455(a) violation here, district judges will not fail in the future to recuse themselves from cases involving attorneys who testify against them in judicial disciplinary proceedings. Cf. O'Keefe, 128 F.3d at 893 ("our decision aids ... justice in other cases because it clarifies an unclear area of the law and serves as a caution to district court judges"); O'Neill v. Continental Airlines, Inc. (In re Continental Airlines), 981 F.2d 1450, 1463 (5th Cir. 1993); Air Line Pilots, 901 F.2d at 1263 ("rather, our ruling here should serve as a caution to other judges [in the same situation]").

Finally, there is little risk that public confidence in the judicial process would be undermined by allowing the defendants' sentences to stand. The Judicial Council's much publicized order should reassure the public that Judge McBryde cannot visit retaliation upon those who testified against him. In these cases, to the contrary, only a legal technicality can cause that fear of retaliation to "relate back" to the beginning of the disciplinary proceedings, when it was not clear that the public defenders' testimony had more weight than any other out-of-court criticisms or defenses of the judge. It is likely that the public

12

will see the panel's needless vacatur of the defendants' sentences as a strike against the judicial process.  Cf. O'Keefe, 128 F.3d at 893 ("decisions that are based on technicalities and do not reach the merits of the case increase public distrust of the legal system").

Thus, under the three-prong harmless error analysis, these sentences should stand.

Even in Jordan, a case relied upon by my colleagues, the court weighed different remedies,[7] ultimately refusing to reverse a conviction but vacating an "excessively harsh" sentence.  United States v. Jordan, 49 F.3d 152, 158-59 (5th Cir. 1995).  In vacating the sentence, the Jordan court highlighted both its "apparent harshness" and the judge's "unbridled sentencing discretion ... in [that] pre-Guidelines case."  Id. at 159.  By contrast, Judge McBryde sentenced the defendants in these cases within the Guidelines, and, as discussed above, there can be no argument that his sentences were harsh.  No abuse of the sentencing prerogative has been alleged by either defendant.

### III.

The panel's decisions in these cases needlessly pile on the prior actions of the Judicial Council of the Fifth Circuit, which has publicly reprimanded Judge McBryde and subjected him

---

[7] The Jordan court did not apply the three-prong test that other Fifth Circuit panels have used, but it did touch on many of the same concerns.

13

essentially to a temporary impeachment. Not only did the Council hold that the judge may be assigned no new cases for one year, but it also purported to require Judge McBryde, for three years after February 6, 1998, to recuse from all matters in his court involving attorneys who testified against him in the disciplinary proceeding (including the federal public defenders in these two cases). The propriety of the Council's order is not an issue in these cases and should not be a basis for the majority's decision. But whatever the order's propriety, it is an entirely different matter to "sanction" Judge McBryde by enforced recusal after the disciplinary proceedings have been concluded, than it is to use that sanction as a basis for challenging his impartiality in decisions he made before the outcome of the proceedings had been determined. Many accusations and charges were made against Judge McBryde, the exact substance and nature of which are unclear, unspecified in the public record, and unknown even by most members of the Fifth Circuit.[8] Nevertheless, as far as I am aware, no one has ever

_____

[8] In the lawsuit Judge McBryde has filed in the District Court for the District of Columbia, he characterizes the testimony against him as having focused on the following topics:

> Judge McBryde's imposition of sanctions for litigation misconduct; his decisions to reject plea agreements; his practices with respect to settlement conferences; his criticisms of attorneys for lack of good faith compliance with rules and orders; his rulings in the Satz and Torres cases; and his procedural rulings at trial, such as the time allotted for opening statements and his rulings cutting off repetitive questioning.

Complaint ¶ 43, McBryde v. Committee to Review Circuit Council

14

questioned Judge McBryde's integrity or his ability to render decisions impartial to the parties before him. If anything, the substance of the allegations against him concerned alleged abuse of <u>all</u> lawyers appearing in his court. Ironically, what is public is that one of the initial charges against Judge McBryde, later apparently dropped, was that he investigated too vigorously the actions of the government in regard to a criminal defendant and intervened too actively to protect the defendant's rights.

Our court would be better off and would itself look more impartial if we simply applied our pre-existing precedents to these cases and affirmed the appellants' sentences as having been imposed well within the guidelines set by Congress through the United States Sentencing Commission.

I respectfully dissent.

---

<u>Conduct and Disability Orders</u>, No. 1:98CV02457 (D.D.C).

Judge McBryde's rulings in the <u>Satz</u> and <u>Torres</u> cases were at the genesis of the judicial conduct proceeding. Judge McBryde's authority to make those rulings was upheld by this court in <u>In re McBryde</u>, 117 F.3d 208 (5th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 2340 (1998).