Revised March 9, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11372
_____


JOE MARIO TREVINO, JR.

                              Petitioner-Appellant,

          v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                              Respondent-Appellee.

_____

               Appeal from the United States District Court
                 for the Northern District of Texas
_____
                         February 19, 1999
Before KING, Chief Judge, JOLLY and DeMOSS, Circuit Judges.

KING, Chief Judge:

     Joe Mario Trevino, a Texas death row inmate, filed a habeas

petition in federal district court, and the district court denied

habeas relief.  Trevino argues that the district court judge,

Judge John McBryde, abused his discretion in denying Trevino's

recusal motion, and Trevino requests this court to vacate Judge

McBryde's order denying habeas relief and to remand the matter to

a different district court judge.  In addition, Trevino requests

a certificate of appealability in order to appeal issues relating

to his state habeas proceeding and his underlying state-court

conviction. We find that Judge McBryde did not abuse his discretion in denying the recusal motion and we deny Trevino leave to appeal all issues relating to his state habeas proceeding and his underlying state-court conviction.

## I. FACTS AND PROCEDURAL HISTORY

In 1984, Trevino was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction seven years later. See Trevino v. State, 815 S.W.2d 592 (Tex. Crim. App. 1991). The United States Supreme Court granted certiorari and remanded to the Texas Court of Criminal Appeals for further proceedings in light of Batson v. Kentucky, 476 U.S. 79 (1986). See Trevino v. Texas, 503 U.S. 562 (1992). The Texas Court of Criminal Appeals remanded the case to the trial court for a Batson hearing, see Trevino v. State, 841 S.W.2d 385 (Tex. Crim. App. 1992), and later affirmed Trevino's conviction following the trial-court hearing, see Trevino v. State, 864 S.W.2d 499 (Tex. Crim. App. 1993). The Supreme Court denied certiorari. See Trevino v. Texas, 510 U.S. 1185 (1994).

Trevino filed a petition for a writ of habeas corpus in the state district court in 1994. The district court issued proposed findings of fact and conclusions of law, which the Texas Court of Criminal Appeals adopted in 1996, denying Trevino's habeas petition. The Supreme Court again denied certiorari. See Trevino v. Texas, 117 S. Ct. 1275 (1997).

2

On June 4, 1997, Trevino filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in the Northern District of Texas, Judge John McBryde presiding. Trevino also filed a motion asking Judge McBryde to recuse himself under 28 U.S.C. § 455(a). He brought the recusal motion based on the fact that his attorney, Art Brender (Brender), was subpoenaed by a special investigatory committee of the Fifth Circuit Judicial Council to testify regarding Judge McBryde. Judge McBryde denied the motion to recuse on September 24, 1997, and on November 12, 1997, he denied the habeas petition. On December 4, 1997, Judge McBryde denied Trevino's request for a certificate of appealability (COA).

Trevino timely appealed to this court. Trevino asserts that Judge McBryde abused his discretion in denying Trevino's recusal motion based on McBryde's potential bias and prejudice against Trevino's attorney. Trevino also requests a COA to appeal alleged errors in his state habeas proceeding and his underlying state-court conviction. We address these issues in turn.

## II. DISCUSSION

### A. The Recusal Motion

Trevino first argues that Judge McBryde should have recused himself from considering Trevino's federal habeas petition due to his attorney's involvement in Fifth Circuit Judicial Council proceedings relating to Judge McBryde. Brender had been subpoenaed by a special investigatory committee of the Judicial

3

Council to testify regarding Judge McBryde. The special investigatory committee held two evidentiary hearings relating to the McBryde proceedings; one took place before Judge McBryde ruled on Trevino's recusal motion and the second occurred shortly after his recusal ruling. Brender did not testify at the first hearing, and, although the subpoena would have extended to the second hearing, he did not testify at that hearing either.

After completion of the McBryde proceedings, the Fifth Circuit Judicial Council issued an order (the Judicial Council Order) reprimanding Judge McBryde. See In re: Matters Involving United States District Judge John H. McBryde, Under the Judicial Conduct and Disability Act of 1980, Nos. 95-05-372-0023 et al. (Jud. Council 5th Cir. Dec. 31, 1997), aff'd, No. 98-372-001 (Jud. Conf. U.S. Sept. 21, 1998). One portion of that order barred Judge McBryde from hearing any cases in which certain attorneys who had testified in the Judicial Council proceedings (Attachment A attorneys) were involved for a period of three years. See Judicial Council Order at 2. Although Brender did not actually testify in front of the special investigatory committee, the Fifth Circuit Judicial Council included him on its list of Attachment A attorneys. See id. at Attachment A. The Judicial Conference of the United States affirmed the portion of the Fifth Circuit Judicial Council order relating to this ban, finding "plenty of evidence in the record to support the judicial council's implicit conclusion that there was a significant risk

4

that Judge McBryde might attempt to retaliate in some fashion against witnesses who had testified against him, or at least that witnesses reasonably perceived such risk." In re: Complaints of Judicial Misconduct or Disability, No. 98-372-001, at 24 (Jud. Conf. U.S. Sept. 21, 1998).

The Judicial Council Order did not affect Judge McBryde's power to adjudicate Trevino's case directly because the portion of the Judicial Council Order barring Judge McBryde from hearing cases involving Attachment A attorneys did not go into effect until February 9, 1998, after Judge McBryde had already denied Trevino's habeas petition and his COA application.  Trevino argues, however, that a reasonable person would question Judge McBryde's impartiality in deciding his habeas petition, and that the judge therefore abused his discretion in denying the recusal motion brought under 28 U.S.C. § 455(a).  Before we can evaluate the merits of this issue we must address the respondent's contention that we lack jurisdiction to consider issues unrelated to a habeas petitioner's underlying state-court conviction.

Trevino filed his habeas petition in the federal district court in June 1997; therefore, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to his case.  See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).  Under AEDPA, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which

5

the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). A COA can only issue if a habeas petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)), cert. denied, 117 S. Ct. 1114 (1997). The COA requirement is jurisdictional in nature--before an appellate court can address the merits of an order denying federal habeas relief, the court (or the federal district court) must grant a COA. See Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1998) (stating that AEDPA's COA requirement is jurisdictional); Carter v. Johnson, 131 F.3d 452, 457 n.3 (5th Cir. 1997) (stating that AEDPA "imposed a jurisdictional prerequisite on appeal from a final order in a federal habeas proceeding, prohibiting the appeal unless a circuit justice or judge issues a 'certificate of appealability'"), cert. denied, 118 S. Ct. 1567 (1998). The district court denied Trevino a COA to appeal his denial of habeas relief on November 12, 1997. Therefore, the respondent argues, unless we find that Trevino has made a substantial

6

showing of the denial of a constitutional right in connection with his state-court conviction, we lack jurisdiction to consider issues relating to the district court's adjudication of Trevino's federal habeas petition.

There is some force to this argument. The AEDPA language does preclude an appeal from a district court's order denying habeas relief until either the district court or the court of appeals grants a COA. We assume arguendo, without deciding, that a court can only issue a COA upon a finding that the applicant has made a substantial showing of the denial of a constitutional right with respect to his underlying state-court conviction. Therefore, the reasoning goes, because Trevino's contention that Judge McBryde abused his discretion in failing to stand recused is unrelated to his underlying state-court conviction, we lack jurisdiction to consider the issue.

However, we find that we have jurisdiction to consider whether Judge McBryde abused his discretion in denying Trevino's recusal motion. Trevino's arguments regarding the recusal motion are not addressed to the merits of Judge McBryde's order denying his habeas petition. Rather, he argues that Judge McBryde <u>lacked the authority</u> to deny habeas relief because the judge should have recused himself and that the order denying habeas relief must therefore be vacated. While we lack jurisdiction to consider the merits of a district court order denying habeas relief without issuing a COA, we do have jurisdiction to consider whether a

7

district court judge properly declined to stand recused and therefore had the authority to deny a habeas petition.  We are guided to this conclusion by our reasoning in Tramonte v. Chrysler Corp., 136 F.3d 1025 (5th Cir. 1998), where we considered whether we had jurisdiction to determine whether a district court judge abused her discretion in denying a recusal motion before she remanded the case to state court.  Our jurisdiction was limited in that case by 28 U.S.C. § 1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  See Tramonte, 136 F.3d at 1027.  We found that even though the district court's actual order remanding the matter to state court was unreviewable, we could adjudicate whether the district court abused its discretion in denying the recusal motion.  See id. at 1027-28.  We noted that once a judge recuses herself, that judge must take no further action save for transferring the matter to a different federal judge, and that if the district court judge should have recused herself, any orders entered after disposing of the recusal motion should be vacated. See id. at 1028.  Therefore, our review of the recusal issue would not constitute a review of the remand order, a review prohibited by statute.  See id.  Instead, "we would be performing an essentially ministerial task of vacating an order that the district court had no authority to enter into for reasons unrelated to the order of remand itself."  Id.  Thus, we

8

concluded that we had jurisdiction over the appeal, and we proceeded to analyze whether the district court judge should have recused herself.  See id.

We similarly find that we have jurisdiction to consider whether Judge McBryde abused his discretion in denying Trevino's recusal motion in this case.  As in Tramonte, if Judge McBryde erred in refusing to stand recused, we must vacate any orders he entered after denying the recusal motion.  See United States v. Anderson, 160 F.3d 231, 234-35 (5th Cir. 1998) (vacating sentence after determining that Judge McBryde abused his discretion in denying a recusal motion); United States v. Avilez-Reyes, 160 F.3d 258, 259-60 (5th Cir. 1998) (same); Tramonte, 136 F.3d at 1028 ("Thus, if Judge Lemmon should have recused herself, any orders she entered following disposition of the recusal motion should be vacated.").  Our consideration of whether to vacate the district court's order denying habeas relief would therefore not constitute an appeal of the merits of that order, a review prohibited by AEDPA in the absence of the issuance of a COA.  Instead, as in Tramonte, we are determining whether we must vacate an order that Judge McBryde may have had no authority to enter.

Our conclusion that we have jurisdiction to consider whether Judge McBryde abused his discretion in denying Trevino's recusal motion comports with the case law of several other circuits, in which courts of appeals have considered whether a district court

9

judge should have recused himself or herself before denying habeas relief without determining that the applicant had made a jurisdictional showing.  See Russell v. Lane, 890 F.2d 947, 947 (7th Cir. 1989) (finding jurisdiction to consider whether a district court abused its discretion in denying a recusal motion before it denied habeas relief, despite the fact that the issue was unrelated to the applicant's underlying state-court conviction, because "federal procedural law governing recusal entitles [the petitioner] to have his habeas corpus petition heard by a[n unbiased] judge"); Taylor v. Campbell, 831 F.2d 297, No. 87-5678, 1987 WL 38693, at *2 (6th Cir. Oct. 13, 1987) (unpublished opinion) (vacating a district court's denial of habeas petition based on violation of recusal statute without granting a certificate of probable cause, the pre-AEDPA equivalent of a COA); Rice v. McKenzie, 581 F.2d 1114, 1118 (4th Cir. 1978) (vacating a district court's denial of a habeas petition brought by a state prisoner because district court abused its discretion in denying recusal motion).  We therefore proceed to evaluate Trevino's claim that Judge McBryde should have recused himself.

Trevino brought his recusal motion under 28 U.S.C. § 455(a), which states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  This recusal standard is objective; the relevant inquiry is whether a "reasonable man, were he to

know all the circumstances, would harbor doubts about the judge's impartiality." Health Servs. Acquisition Corp. v. Liljeberg, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), aff'd, 486 U.S. 847 (1988); see Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc. (In re Continental Airlines Corp.), 901 F.2d 1259, 1262 (5th Cir. 1990); In re Faulkner, 856 F.2d 716, 720-21 (5th Cir. 1988). We review a district court judge's decision not to recuse himself for abuse of discretion. See United States v. Mizell, 88 F.3d 288, 299 (5th Cir.) (reviewing a district court's denial of a recusal motion for an abuse of discretion), cert. denied, 117 S. Ct. 620 (1996); In re City of Houston, 745 F.2d 925, 927 (5th Cir. 1984) ("The issue of judicial disqualification is solely one of law. It is a sensitive question of assessing all of the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion.") (citation omitted) (internal quotation marks omitted).

On the facts of this case we hold that Judge McBryde did not abuse his discretion by failing to recuse himself from Trevino's case. At oral argument, Trevino's counsel analogized this case to two recently decided cases where we held that Judge McBryde abused his discretion by failing to recuse himself under § 455(a) because of participation by counsel in Fifth Circuit Judicial Council proceedings. See Anderson, 160 F.3d at 234-35; Avilez-Reyes, 160 F.3d at 259-60. In each case, we emphasized that, at

11

the time Judge McBryde ruled on the recusal motion, he was aware that the defendant's attorney had already testified against him. See Anderson, 160 F.3d at 233 ("The average person when viewing this specific situation, would question Judge McBryde's ability to be impartial in a case involving an attorney who has testified adversely against Judge McBryde in a Judicial Council proceeding."); Avilez-Reyes, 160 F.3d at 259 (finding that defendant's case "became infected with the appearance of impropriety once Stickney, [the defendant's] attorney, testified against Judge McBryde in the Fifth Circuit Judicial Council proceedings" a month before the recusal motion was brought). In contrast to Anderson and Avilez-Reyes, Brender never actually testified in either of the evidentiary hearings relating to Judge McBryde held by the special investigating committee of the Fifth Circuit Judicial Council. In fact, the record is devoid of any evidence as to what Brender would have said had he been called to testify.[1]

---

[1] Brender argues that he was prohibited from creating a record relating to his participation in the Judicial Council proceedings because of the confidentiality requirements of 28 U.S.C. § 372(c)(14). Under that provision, "all papers, documents, and records of [the Judicial Council] proceedings . . . shall be confidential and shall not be disclosed by any person in any proceeding." Id. However, Brender apparently made no effort to comply with the exception found in § 372(c)(14)(C), under which such records can be disclosed if "such disclosure is authorized in writing by the judge or magistrate who is the subject of the complaint and by the chief judge of the circuit, the Chief Justice, or the chairman of the standing committee." Without a record, or even a proffer, concerning Brender's role in the Judicial Council proceedings, we are left only to speculate

Unlike the situations in Anderson and Avilez-Reyes, we are convinced that a reasonable person, knowing all of the circumstances of this case, would not harbor doubts about Judge McBryde's impartiality. We are mindful that the reasonable person standard in the recusal context contemplates a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995) (citing In re Mason, 916 F.2d 384, 386 (7th Cir. 1990)).

A showing of potential bias by a judge against a party's attorney does not generally suffice to require a judge to disqualify himself or herself under § 455(a). Rather, the general rule, adopted in this and several other circuits, is that "an appellate court, in passing on questions of disqualification[,] . . . should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel." Davis v. Board of Sch. Comm'rs, 517 F.2d 1044, 1052 (5th Cir. 1975); see FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 576 n.13 (7th Cir. 1989) ("Friction between court and counsel does not constitute bias."); In re Cooper, 821 F.2d 833, 838 (1st Cir. 1987); Gilbert v. City of Little Rock, 722 F.2d 1390, 1399 (8th Cir. 1983); United States v. Sibla, 624 F.2d 864, 869 (9th Cir.

---

as to the content of his proposed testimony.

13

1980).  Bias against a party's attorney does not require disqualification unless "it can also be shown that such a controversy would demonstrate a bias for or against the party itself."  Henderson v. Department of Pub. Safety & Corrections, 901 F.2d 1288, 1296 (5th Cir. 1990) (citing Davis); see also In re Cooper, 821 F.2d at 839 ("It is true that occasionally exceptional circumstances do arise where a judge's attitude toward a particular attorney is so hostile that the judge's impartiality toward the client may reasonably be questioned."); In re Beard, 811 F.2d 818, 830 (4th Cir. 1987) ("Bias against an attorney is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself.").  Trevino does not allege any circumstances suggesting that a reasonable person would harbor doubts about Judge McBryde's impartiality toward him; his only argument is based on the relationship between Judge McBryde and Brender.  We find that a reasonable, well-informed observer would not harbor doubt about Judge McBryde's impartiality in adjudicating Trevino's habeas claim, where any potential bias would have been directed against Trevino's attorney and there is no suggestion of bias directed at Trevino himself.[2]

---

[2] We did note in Davis that bias against a party's attorney could provide grounds for recusal if the bias was of a "continuing and 'personal' nature over and above mere bias because of [the attorney's] conduct."  517 F.2d at 1051; see

14

B.  The State Habeas Corpus Proceeding Claim

Trevino next claims that he is entitled to a COA to appeal the district court's denial of his habeas claim relating to his state habeas proceeding.  Specifically, Trevino argues that he was denied due process in his state habeas proceeding because the state habeas court adopted the district attorney's proposed findings of fact and conclusions of law only three hours after they were filed with the court.

We cannot grant Trevino a COA on this issue.  Our circuit precedent makes clear that Trevino's "claim fails because infirmities in state habeas proceedings do not constitute grounds for relief in federal court."  Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.), cert. denied, Johnson v. Monroe, 118 S. Ct. 576 (1997); see Nichols v. Scott, 69 F.3d 1255, 1275 (5th

---

Henderson, 901 F.2d at 1296 (citing Davis); In re Beard, 811 F.2d at 830 (citing Davis).  In explaining this exception in Davis, we stated that:

> [T]here could be a case where the cause of the controversy with the lawyer would demonstrate bias of such a nature as to amount to a bias against a group of which the party was a member--e.g., all Negroes, Jews, Germans, or Baptists.  This then would be bias of a continuing and 'personal' nature over and above mere bias against a lawyer because of his conduct.

517 F.2d at 1051.  Trevino has not alleged that any potential bias against Brender was of a "continuing and personal nature" that would justify a finding of constructive bias against him. In addition, there is no suggestion in the record that the source of the bias against Brender, i.e., his potential testimony in the Judicial Council proceedings, would demonstrate a bias against a group of which Trevino was a part.  We therefore decline to apply this exception on the facts of this case.

15

Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992) (same); Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir. 1987) (same); Vail v. Procunier, 747 F.2d 277, 277 (5th Cir. 1984) (denying petitioner a certificate of probable cause because "[i]nfirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief"). Other circuits have similarly decided that habeas corpus relief is not available to correct alleged errors in state habeas proceedings. See, e.g., Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986). But see Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984) (allowing a federal habeas claim relating to a state court habeas proceeding).

The Eighth Circuit has specifically considered and rejected the issue that Trevino raises for appeal. See Jolly, 28 F.3d at 54. In that case, the petitioner claimed that he was deprived of due process when the state habeas court adopted the state's proposed findings of fact and law verbatim. See id. The Eighth Circuit found that the petitioner could not raise that claim in

16

federal court on his § 2254 petition because it did not raise an error of a "constitutional magnitude" and was collateral to the petitioner's detention and not a constitutional challenge of the detention itself.  Id.  Trevino's claim, in which he alleges errors in his state habeas proceedings, must similarly fail.  We therefore decline to issue Trevino a COA on this issue.

C.  The Underlying State-Court Conviction Claims

Finally, Trevino presents four issues for review related to the punishment phase of his state trial--first, that the jury instruction was deficient; second, that the state court erred by refusing to allow Trevino to ask jurors about their ability to consider youth as a potentially mitigating factor; third, that the state failed to disclose certain documents; and fourth, that the state court erred in finding a document inadmissible.[3]

Trevino's petition for habeas relief in the state trial court raised each of these issues.  On each issue, the state trial court entered findings of fact and conclusions of law, recommending to the Court of Criminal Appeals that it should deny relief.  The Court of Criminal Appeals denied relief, explicitly basing its decision on the findings of the trial court.  This

---

[3] At the end of his brief, Trevino lists 11 additional, undeveloped arguments relating to his state-court conviction. Because they are inadequately argued, we consider these issues waived.  See Royal v. Tombone, 141 F.3d 596, 599 n.3 (5th Cir. 1998) (stating that a petitioner waived inadequately briefed issues in his appeal of the denial of his habeas petition); Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) (stating that a party who inadequately briefs an issue waives the claim).

17

explicit denial of relief by the Texas Court of Criminal Appeals of Trevino's claims qualifies as an "adjudication on the merits" entitled to deference under AEDPA.  See Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998); Drinkard, 97 F.3d at 768 (finding "no question" that a claim was adjudicated on the merits in state court proceedings where state trial court entered explicit findings later adopted by the Texas Court of Criminal Appeals in denying relief); cf. Green v. Johnson, 116 F.3d 1115, 1120-21 (5th Cir. 1997) (stating that the question of whether a state-court adjudication was a "resolution on the merits," the pre-AEDPA equivalent of an "adjudication on the merits," turns solely on whether the state court's disposition was substantive or procedural, and does not depend on the "quality of a court's review of claims").

Under the AEDPA deference scheme, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2).  See Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir. 1998); Drinkard, 97 F.3d at 767-68.  When reviewing a purely legal question, we must defer to the state court unless its decision rested on a legal determination that was contrary to clearly established federal law as determined by the Supreme Court.  See Lockhart v. Johnson, 104 F.3d 54, 57 (5th Cir.), cert. denied, 117 S. Ct. 2518 (1997); Drinkard, 97 F.3d at 768.  Additionally, a federal court "will not disturb a state court's application of law to

18

facts unless the state court's conclusions involved an 'unreasonable application' of clearly established federal law as determined by the Supreme Court."  Davis, 158 F.3d at 812 (quoting 28 U.S.C. § 2254(d)(1)); see Lockhart, 104 F.3d at 57. An application of federal law is unreasonable only "when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." Drinkard, 97 F.3d at 769; see Davis, 158 F.3d at 812; Corwin, 150 F.3d at 471-72.  State factual findings are presumed to be correct unless rebutted by clear and convincing evidence.  See Davis, 158 F.3d at 812; Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998).

With this deference standard in mind, we consider whether Trevino has raised a substantial showing of the denial of a constitutional right with respect to his underlying state-court conviction.

### 1.  Punishment Phase Jury Instructions

Trevino argues that the trial court erred in refusing his request to instruct the punishment-phase jury that it could consider his "social history and background," age, immaturity, or any other "extenuating circumstances" in determining his appropriate sentence.  Trevino also claims that the jury instructions improperly precluded the jury from considering mitigating factors in determining the proper punishment. Specifically, Trevino objects to a portion of the jury

instruction, which read, "During your deliberations, you shall not consider or discuss what the effect of your answer to the above issues may be."

The Texas Court of Criminal Appeals found that this claim had no merit, adopting the trial court's finding that the punishment phase jury instruction did not prevent the jury from giving effect to any potentially mitigating testimony. The court found that the trial judge specifically told the jury before the punishment-phase deliberations: "You are instructed in answering the issues submitted to you, you may take into consideration all of the facts shown by the evidence admitted before you in the full trial of this case." The state habeas court reasoned that this instruction, together with the jury instruction taken as a whole, allowed the jury to consider any evidence admitted in the trial--including any evidence concerning Trevino's age, his social history and background, his immaturity, or any other extenuating circumstances. In addition, the court noted that the instruction given to the jury in this case was similar to the instruction upheld by the Supreme Court in Johnson v. Texas, 509 U.S. 350, 368 (1993); in each, the jury was explicitly told it could take into consideration any evidence admitted in the trial. The state court concluded that the jury instruction did not prevent consideration of any mitigating factors in fashioning an appropriate sentence, and that the jury instructions were therefore not deficient.

20

We find that Trevino has not made a substantial showing of the denial of a constitutional right on this issue. The relevant question, as the Texas Court of Criminal Appeals noted, is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" Johnson, 509 U.S. at 367-68 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). The state court's conclusion that, given the trial court's explicit instruction to consider all evidence in determining the proper sentence and the instruction taken as a whole, there was no reasonable likelihood that the jury was foreclosed from considering any mitigating evidence is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Green v. Johnson, 160 F.3d 1029, 1043-44 (5th Cir. Nov. 11, 1998) (denying certificate of probable cause to applicant seeking to appeal district court's denial of habeas relief on jury instruction issue because applicant did not demonstrate any likelihood that jury was prevented from considering mitigating evidence during punishment-phase sentencing); Tucker v. Johnson, 115 F.3d 276, 281-82 (5th Cir. 1997) (denying certificate of probable cause on jury instruction issue because jury was not foreclosed from considering mitigating evidence). We therefore decline to issue Trevino a COA on this issue.

2. Voir Dire Questioning

Trevino next argues that the trial court erred in refusing to allow him to inquire during voir dire whether three prospective jurors were able to consider youth as a potentially mitigating factor. Trevino contends that youth is a "relevant mitigating factor of great weight," Eddings v. Oklahoma, 455 U.S. 104, 116 (1982), and that under Morgan v. Illinois, 504 U.S. 719 (1992), the trial court's refusal to allow him to question the jurors regarding youth violated his due process rights.

The Texas Court of Criminal Appeals found no merit to this contention for three principal reasons. First, it noted that it had already considered and rejected this argument on Trevino's direct appeal, where it had found that Trevino's attempt to question the venirepersons amounted to an attempt to bind the jurors to consider youth as a mitigating factor without informing them of the applicable law. Second, the state court found that, in fact, the trial court had allowed Trevino to inquire whether these venirepersons could consider youth as a mitigating factor. Third, the Texas Court of Criminal Appeals found that Morgan v. Illinois only required a court to allow inquiry during voir dire regarding whether jurors would, as a matter of course, impose the death penalty after finding a defendant guilty of a capital crime, and did not require inquiry into whether possible jurors could consider individual extenuating circumstances to be mitigating.

22

We find that Trevino does not raise a substantial showing of a constitutional right with regard to this issue. To begin with, Trevino has not presented any evidence that suggests that he was not able to inquire whether each venireperson at issue would consider youth to be a mitigating factor. Even if Trevino were to contend that he was not allowed sufficient voir dire regarding potential jurors' views on youth as a mitigating factor, the state habeas court's application of Morgan v. Illinois was not unreasonable. This circuit has previously stated that Morgan only "involves the narrow question of whether, in a capital case, jurors must be asked whether they would automatically impose the death penalty upon conviction of the defendant." United States v. Greer, 968 F.2d 433, 437 n.7 (5th Cir. 1992) (internal quotation marks omitted); see also United States v. McVeigh, 153 F.3d 1166, 1208 (10th Cir. 1998) ("[W]e have held that Morgan does not require a court to allow questions regarding how a juror would vote during the penalty phase if presented with specific mitigating factors. Other courts have issued similar rulings, holding that Morgan does not require questioning about specific mitigating or aggravating factors.") (citation omitted); United States v. McCullah, 76 F.3d 1087, 1113 (10th Cir. 1996) (finding that Morgan only requires questioning during voir dire regarding whether jurors would automatically impose the death penalty, and it does not require specific questioning regarding mitigating factors), cert. denied, 117 S. Ct. 1699 (1997); United States v.

23

Tipton, 90 F.3d 861, 879 (4th Cir. 1996) (finding it was not an abuse of the trial court's discretion to refuse to allow detailed questioning during voir dire concerning specific mitigating factors), cert. denied, 117 S. Ct. 2414 (1997), and cert. denied, 117 S. Ct. 2414 (1997), and cert. denied, 117 S. Ct. 2414 (1997). After applying the AEDPA-mandated standard of review to these state-court findings and conclusions, we cannot say that Trevino has made a substantial showing of the denial of a constitutional right on this issue. We therefore decline to issue Trevino a COA on this issue.

### 3. Failure to Disclose Documents

In his third claim relating to his underlying state-court conviction, Trevino argues that the State of Texas suppressed records material to the punishment phase of the trial in violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, Trevino maintains that the state refused to disclose material records regarding Trevino's upbringing in the possession of the Harris County Independent School District, Child Protective Services, and the Texas Youth Council.

The Texas Court of Criminal Appeals rejected Trevino's Brady contention on the basis of specific findings. First, the court found that Trevino either had possession of the allegedly suppressed records or that he could have obtained them through

the exercise of reasonable diligence.[4]  Second, the court found

that the allegedly suppressed records were not material.[5]

[4] Specifically, the state habeas court in part found:

9.  Each of the records that [Trevino] contends were suppressed are records which were and are readily accessible to [Trevino].

. . . .

25.  The essence of [Trevino's] complaint is that the State has suppressed his own records.  However, educational records, medical records, juvenile records, TYC records, and prison records, are readily available to [Trevino] and, hence, are [Trevino's] records.

. . . .

28.  Hence, all of this information was fully available to [Trevino] and could be obtained through reasonable diligence.

. . . .

38.  The documents which [Trevino] claims were suppressed were readily available to him through reasonable diligence, and not so readily available to the State.

. . . .

45.  All of the purportedly suppressed information was readily available to [Trevino] and his attorneys, with [Trevino's] consent.Hence, all of this information was fully available to [Trevino] and could be obtained through reasonable diligence.

[5] The state habeas court adopted specific findings on this issue as well, including:

54.  The documents which [Trevino] claims were suppressed were not "favorable" to him.

. . . .

58.  The evidence which [Trevino] now claims would have

Therefore, the court found that Trevino was not entitled to relief under Brady.

Trevino is not entitled to a COA on this issue because he cannot overcome the deference we must afford these state-court findings under AEDPA. To prevail on a Brady claim, Trevino must show that the evidence was suppressed by the prosecution; that the evidence was favorable to the defense; and that the evidence was material. Brady, 373 U.S. at 87. Whether documents must be produced and whether they are material under Brady is a mixed question of law and fact. See Brown v. Cain, 104 F.3d 744, 750 (5th Cir.), cert. denied, 117 S. Ct. 1489 (1997); Kennedy, 54 F.3d at 682. Given this standard, we cannot say that the state habeas court's application of Brady was unreasonable. Trevino has made no attempt to rebut the presumption of correctness we

---

been mitigating does not "tend to justify, excuse, or clear" [Trevino] of the charge of capital murder. 59. The trial record shows that the supposedly suppressed documents are cumulative and, in some instances, out-of-date or incorrect.

. . . .

74. Based upon the cumulative nature of the supposedly suppressed evidence, there would be no probability sufficient to undermine the confidence in the outcome of the proceeding. Simply stated, additional background mitigation evidence, even if provided by way of expert testimony, or evidence of intoxication at the time of the offense would not have caused the jury to respond differently to the punishment issues submitted.The trial record shows that the supposedly suppressed documents are cumulative and, in some instances, out-of-date or incorrect.

must afford the state court's findings that Trevino could have obtained all of the information at issue with reasonable diligence and that the records were not material. The state court's conclusion that the prosecution had no <u>Brady</u> obligation to produce these records for Trevino is therefore not an unreasonable application of clearly established federal law. <u>See</u> <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1082 (5th Cir. 1998) (denying habeas relief on <u>Brady</u> issue because petitioner presented no "convincing evidence that casts doubt on the state court's factual findings"); <u>Brown</u>, 104 F.3d at 749 (finding no <u>Brady</u> violation where habeas applicant presented no evidence rebutting state habeas court's finding that relevant evidence was not exculpatory). We find that Trevino has not made a substantial showing of the denial of a constitutional right on this issue, and we therefore deny Trevino's request for a COA.

## 4. Evidentiary Issues

Trevino's last claim relating to his underlying state-court conviction challenges an evidentiary ruling of the state trial court. During the punishment phase of his trial, the court ruled that a report that Trevino's counsel attempted to introduce was inadmissible hearsay. Trevino claims that the report, prepared by an educational psychologist who had examined him, found that he had "limited judgment and possible impulsivity," issues he claims could have been considered in the punishment phase of his trial.

Trevino does not argue that the trial court's evidentiary ruling deprived him of a constitutional right; his argument to this court is simply that the trial court's ruling incorrectly excluded evidence relevant to the punishment phase of his trial. The Texas Court of Criminal Appeals denied this claim, finding that any error by the trial court in its evidentiary ruling was subject to harmless-error review and that because Trevino had not alleged that the ruling had an injurious effect on his sentence, he was not entitled to habeas relief.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A petitioner is not entitled to federal habeas relief due to trial error unless "'the error had substantial and injurious effect or influence in determining the jury's [sentence].'" Corwin, 150 F.3d at 476 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)) (further internal quotation marks omitted). Trevino has not presented any evidence to rebut the state habeas court's finding that he failed to allege that the evidentiary ruling had an injurious effect on his sentence. Indeed, he only argues to this court that the report was "relevant." The state habeas court's conclusion that he was not entitled to habeas relief is therefore not an unreasonable application of federal law as determined by the Supreme Court, and we decline to grant Trevino a COA on this issue. See id. at 476-77 (denying petitioner a COA on

28

evidentiary issue because admission "did not have a substantial and injurious effect or influence in determining the jury's verdict") (internal quotation marks omitted).

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision not to recuse and we DENY Trevino's request for a COA on all other issues.

DeMoss, Circuit Judge, dissenting:


I respectfully dissent. I would not reach the merits of Trevino's petition because Judge McBryde should have recused himself from its original consideration.

The prior decisions of this Court in *United States v. Anderson*, 160 F.3d 231 (5th Cir. 1998), and *United States v. Avilez-Reyes*, 160 F.3d 258 (5th Cir. 1998), control the result in this case. Applying 28 U.S.C. § 455(a) to the question of whether Judge McBryde should have recused himself from a sentencing hearing in which the defendant was represented by an Assistant Federal Public Defender who had testified against Judge McBryde before the special investigatory committee of the Judicial Council, we concluded that a reasonable person, when apprised of the relevant circumstances that surround this case, "would harbor doubts about Judge McBryde's impartiality." *Anderson*, 160 F.3d at 233; *see also Avilez-Reyes*, 160 F.3d at 259. The considerations relied upon in *Anderson* included the fact that many attorneys are reluctant to file complaints against judges or testify against them for fear of retaliation, as well as the fact that the Judicial Council itself saw fit to order Judge McBryde not to participate in cases involving the

30

testifying attorneys for a period of three years.  *See Anderson*, 160 F.3d at 233-34.  Given that the aim of § 455 is to avoid even the appearance of impropriety, *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S. Ct. 2194, 2203 (1988), we concluded that Judge McBryde abused his discretion in failing to recuse.

The logic of these precedents should control the present case.  We must consider the facts and determine whether a reasonable person who is aware of all of the relevant circumstances would doubt Judge McBryde's impartiality.  Such a reasonable person would know that Judge McBryde faced charges of misconduct which specifically related, in part, to his treatment of lawyers appearing in his court.  *See In re Complaints of Judicial Misconduct or Disability (McBryde)*, No. 98-372-001, manuscript op. at 2 (Jud. Conf. U.S. Sept. 21, 1998).  Such a reasonable person would know that an investigation of his conduct had been ongoing for over two years, and that this investigation involved taking testimony from lawyers who had practiced before Judge McBryde.  *See id.*  Such a reasonable person would know that the proceedings were adversarial in every sense of the word, that Judge McBryde was fully aware of all these complaints, that he was represented by counsel, that he had been apprised of the nature and substance of the complaints, and that he personally attended many of the committee's hearings in which testimony was

-31-

presented. Such a reasonable person would know that at the time Trevino filed the recusal motion, Brender was under subpoena to appear before the committee and testify. Such a reasonable person would know that Judge McBryde was given "brief explanation[s]" of the substance of the witnesses' testimony in advance of their appearances. *Id.* Such a reasonable person would know that at the time Judge McBryde denied the motion on September 24, 1997, there were still scheduled sessions at which Brender could have been called to testify. *See id.* Such a reasonable person would know that Judge McBryde either knew with certainty or would have inferred that Brender would give adverse testimony.

If a reasonable person would harbor doubts about the impartiality of a judge who knew of adverse testimony actually supplied against him by the lawyers in a case, it stands to reason that the same doubt would exist with respect to an attorney who had been subpoenaed and for whom there was every reason to believe that he would in fact be called to testify and provide additional adverse testimony. This conclusion is bolstered by the fact that despite the committee's failure to actually call Brender to testify, at the end of the proceedings his name was nevertheless included on the list of lawyers over whom Judge McBryde is not permitted to preside for a period of three years. *See In re Matters Involving United States District*

*Judge John H. McBryde, Under the Judicial Conduct and Disability Act of 1980*, Nos. 95-05-372-0023 et al. (Jud. Council 5th Cir. Dec. 31, 1997) (order and public reprimand), *aff'd*, No.98-372-001, manuscript op. at 24 (Jud. Conf. U.S. Sept. 21, 1998) ("There is plenty of evidence in the record to support the judicial council's implicit conclusion that Judge McBryde might attempt to retaliate in some fashion against witnesses who had testified against him, or at least that witnesses reasonably perceived such a risk."). The majority's attempt to distinguish *Anderson* and *Avilez-Reyes* is, quite frankly, a stretch.

In addition to our controlling precedents, requiring Judge McBryde's recusal comports with established interpretations of the Code of Conduct for United States Judges published by the Judicial Conference Committee on Codes of Conduct.[******] Because I

---

[******] Canon 3C(1) of the Code requires that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ." Notably, this requirement embodies the same standard for recusal as does § 455. Applying Canon 3C(1), the Committee has determined that "[a] judge who is personally involved in litigation with the IRS is recused, subject to remittal, from cases in which . . . the Assistant United States Attorneys appearing before the judge are also litigating the judge's dispute with the IRS." Compendium § 3.4-8(c). Additionally, "[a] judge should recuse from cases handled by a law firm, one of whose members or associates represents a party adverse to the judge in other litigation." Compendium § 3.6-3(a). And although "[a]utomatic recusal is not necessary when a 28 U.S.C. § 372 complaint is filed" against a judge, because it may not be meritorious, "[a] judge should normally recuse if the complaint is not dismissed." Compendium § 3.6-7. Each of these examples provides additional color around the edges of Judge McBryde's situation, and each of them suggests generally that when a judge

believe that our decision is controlled by *Anderson* and *Avilez-Reyes*, and because I have no trouble concluding that a reasonable person aware of all the facts would question Judge McBryde's impartiality in a case involving a lawyer who was named as a witness in the investigation of Judge McBryde's judicial misconduct, I would vacate the judgment and remand the case for proceedings before a different judge. I therefore dissent.

---

is involved in some variety of litigation, there ordinarily is sufficient doubt about the judge's impartiality towards opposing counsel to trigger the obligation to recuse.