**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-10716

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

ALFRED E. BREMERS; LEON W. SNEARLY, also known as Butch Ji Alish Tasen; ROBERT W. STEWART, III,

Defendants - Appellants.

Appeals from the United States District Court
for the Northern District of Texas

November 9, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges,

DeMOSS, Circuit Judge:

This is a consolidated direct appeal by three co-defendants, Alfred E. Bremers ("Bremers"), Leon W. Snearly, *aka Butch Ji Alish Tasen* ("Snearly"), and Robert W. Stewart, III ("Stewart"), from the judgments and sentences entered by the United States District Court for the Northern District of Texas, Judge John H. McBryde, presiding. Among the numerous issues raised by each defendant on appeal is a claim by each that the district judge committed reversible error by failing to recuse himself from their cases.

We agree, and because we find, for the reasons which follow, that the district judge should have recused himself, we vacate each defendant's conviction and sentence and remand for a new consolidated trial before a different district judge. Our holding in this regard renders the defendants' various other issues on appeal moot, and with the exception of Stewart's contention that the district court erred in failing to grant his motion for relief from prejudicial joinder, those issues are not addressed by this opinion.

## I.  Background

The three defendants were named, along with James L. Cox ("Cox"), in a 22-count indictment returned in the Fort Worth Division of the Northern District of Texas on September 17, 1997. The scheme to defraud alleged in that indictment charged Bremers, Cox, Snearly, and Stewart with defrauding individuals by inducing them to invest monies in fraudulent gas and oil programs, for a period of time spanning from 1990 to 1993. All tolled, investors throughout the United States and Europe invested nearly $10,200,000 in the defendants' oil and gas programs.

With respect to the indictment returned against the defendants, counts one through six charged all four co-defendants with mail fraud, in violation of 18 U.S.C. § 1341; counts seven through nineteen charged all four co-defendants with causing the transportation of stolen securities in interstate commerce, in violation of 18 U.S.C. § 2314; and counts twenty and twenty-one

2

charged Bremers and Cox with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(I).  The indictment also charged that the named defendants aided and abetted the offenses charged in counts one through twenty-one.  Cox was also charged individually in count twenty-two with money laundering.  Cox pleaded guilty to count one of the indictment, and pursuant to a plea and cooperation agreement, he agreed to testify on behalf of the government at the jury trial of Bremers, Snearly, and Stewart.

On September 18, 1997, the district court appointed the Federal Public Defender to represent Bremers.  Assistant Federal Public Defender Peter Michael Fleury accepted the appointment and appeared before Judge McBryde on Bremers' behalf for his initial appearance hearing.  On September 26, 1997, Assistant Federal Public Defender Douglas C. Greene appeared  on Bremers' behalf for his arraignment.  No formal substitution of counsel was made a matter of record, however the record reveals that Greene became Bremers' trial counsel from that point forward.

During the months of August and September 1997, several of Greene's colleagues in the Federal Public Defender's office offered testimony against Judge McBryde before a special investigatory committee of the Fifth Circuit Judicial Council.  *See* <u>In re: Matters Involving United States District Judge John H. McBryde, Under the Judicial Conduct and Disability Act of 1980</u>, No. 95-05-372-0023 (Jud. Council 5th Cir. Dec. 31, 1997), *aff'd*, No. 98-372-

001 (Jud. Conf. U.S. Sept. 21, 1998).  Greene did not himself offer testimony against Judge McBryde, however, Ira Kirkendoll, the Federal Public Defender for the Northern District of Texas, and Paul Stickney, who was Greene's immediate supervisor, did. Additionally, Peter Fleury, who had appeared before Judge McBryde on behalf of Bremers on at least one occasion, also offered testimony against Judge McBryde.

On February 2, 1998, Bremers moved Judge McBryde to recuse himself from the case pursuant to 28 U.S.C. § 455(a) and on the basis that a reasonable person, knowing all of the facts and circumstances, would have questioned Judge McBryde's ability to sit impartially as the judge in Bremers' criminal trial.  On February 9, 1998, the government filed its written response in non-opposition to the motion for recusal, stating that it believed "such motion is well-taken, and should be granted."

On the very day the government expressed its non-opposition to Bremers' motion for recusal, the Judicial Council issued an order directing the Clerk of the Court for the Northern District of Texas to reassign to a judge other than Judge McBryde each of those cases designated in Attachment "B" thereto because at least one of the attorneys listed in Attachment "A" thereto was involved in such cases.  On February 10, 1998, Chief Judge Jerry Buchmeyer of the Northern District of Texas, entered a special order, pursuant to the Council's February 9 order, transferring all of the Attachment "B" cases from the docket of Judge McBryde to the docket of Judge

4

Terry R. Means. The same day, Chief Judge Buchmeyer entered an amended special order indicating that the case of United States v. Bremers, 4:97-CR-0111, was not transferred because it did not involve an Attachment "A" attorney. The amended order again transferred all Attachment "B" cases to Judge Means, however, the Attachment "B" accompanying the amended special order omitted the Bremers case. This is best explained by the fact that on February 11, 1998, Gregory A. Nussel, Secretary to the Judicial Council, transmitted to Chief Judge Buchmeyer an amended Attachment "B" which reflected the amended list of cases provided the Council by the district clerk's office.

On February 10 and 11, 1998, Judge McBryde sent two memoranda to Chief Judge Buchmeyer in which he expressed his "urgent need of information" regarding the Bremers case. In his memoranda, Judge McBryde characterized the Judicial Council's February 9 order as "unlawful," but conceded that he was bound by it; he also requested clarification as to whether he would be permitted to continue presiding over the Bremers case, suggesting that he would be "glad to do so." In either event, Judge McBryde expressed his concern that the unopposed motion for recusal needed to be addressed as the Bremers trial was set for February 17, 1998.

Chief Judge Buchmeyer responded to Judge McBryde on February 11, 1998, informing him that the Attachment "A" attorney, Peter Fleury, had only made an initial appearance for Bremers and was replaced by Doug Greene, and as a result, the Judicial Council had

5

approved the substitution of the amended Attachment "B" which was provided by the district clerk's office and which excluded the Bremers case. Thus, Judge McBryde was to retain the Bremers case.

Upon being so advised, Judge McBryde entered an order in the Bremers case the following day, February 12, 1998, explaining why he was going forward with the handling of the case. He noted his assumption that "the Judicial Council does not interpret its order as prohibiting [Judge McBryde] from participating in any action simply because an attorney listed in the Attachment A supervises an attorney who is currently providing representation to a party to the action." Judge McBryde ordered that any party contending that he should not preside was to file, by 3:30 p.m. that afternoon, "a document making known her or his position on that subject, spelling out specifically the reasons why such position is being taken by that party, all facts relied upon . . . , and all legal authorities relied upon . . . in support of that position." Judge McBryde further advised that the failure to timely do so would be deemed a waiver of any objection to his presiding over the case, and he set a hearing for the following morning, Friday, February 13, 1999, at 8:30 a.m.

The day of February 12, 1998, was a busy one in the district clerk's office. At 11:43 a.m., defendant Stewart filed a motion for recusal and for continuance. Upon his receipt thereof, Judge McBryde entered another order requiring all parties to file their response to Stewart's motion by 3:30 p.m. that afternoon. At 3:09

6

p.m., the government filed its opposition to Stewart's motion. At 3:35 p.m., Bremers renewed his motion to recuse and joined in Stewart's motion. And at 3:47 p.m., defendant Snearly filed his motion for recusal.

At the hearing on the motions for recusal, the government, through three separate attorneys, expressed its agreement with Bremers' motion for recusal. At one point during Judge McBryde's questioning of the government regarding its position, the following colloquy occurred:

> THE COURT: And is your office telling me that if you were to be successful in the trial of this case that you would stipulate in an appeal by any of the defendants that error was committed?
>
> MR. BARTA: We would have to look at that in totality of facts, but there is certainly a chance that we would have to make a confession of error, yes, sir.
>
> THE COURT: In other words, there's a possibility that if I were to go forward with the trial of this case, that the government would stipulate error if a defendant appealed from an adverse judgment in this case.
>
> MR. BARTA: That is correct, Your Honor.

Despite the government's agreement with the merits of Bremers' motion for recusal, Judge McBryde nonetheless overruled all of the motions for recusal stating that he had "a legal obligation to preside" and "no obligation to recuse in this case."[1] On the date

---

[1] The record indicates that Judge McBryde's demeanor at this hearing, was obviously defensive. In response to the government's reference to the "general order addressing cases in which you were recused," Judge McBryde responded, "I haven't been recused in any case, Mr. Barta. I hope you understand that. There's an order that I will not participate in certain cases. Is that the order

of the hearing, he entered two separate orders denying Bremers' as well as both Stewart's and Snearly's motions for recusal.

Trial commenced several days later on February 17, 1998. During the trial, the government waived counts five, six, and thirteen. And on February 24, 1998, the jury returned its verdict, finding each of the three defendants guilty on at least some of the charged counts of the indictment. Specifically, the jury found Bremers guilty as to all counts, it found Snearly guilty of five counts of transportation of stolen securities (counts eight through eleven, and fourteen), and it found Stewart guilty of six counts of transportation of stolen securities (counts seven through twelve).

On May 29, 1998, Bremers was sentenced by Judge McBryde. He received a 121-month aggregate term of imprisonment and was ordered to pay restitution in the amount of $6,737,077.

On August 28, 1998, Snearly was sentenced by Judge McBryde. He received a 46-month aggregate term of imprisonment and was ordered to pay restitution in the amount of $4,963,647.

Also on August 28, 1998, Stewart was sentenced by Judge McBryde. He received a 41-month aggregate term of imprisonment and was ordered to pay restitution in the amount of $5,379,246.

## II. Recusal

The three defendants appeal Judge McBryde's refusal to recuse himself pursuant to 28 U.S.C. § 455(a), contending that he abused

---

you're referring to?"

8

his discretion in finding that a reasonable person knowing all of the circumstances of this case would not question his impartiality. The defendants seek to have their convictions vacated and to have their cases remanded for a new trial before a different district judge.

Title 28, United States Code, section 455(a) governs the defendants' recusal motions and requires that "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Id. Since the goal of section 455(a) is to avoid even the appearance of impropriety, *see* Liljeberg v. Health Svcs Acquisition Corp., 486 U.S. 847, 860 (1988), recusal may well be required even where no actual partiality exists. *See* Hall v. Small Business Admin., 695 F.2d 175, 178 (5th Cir. 1983). A motion for recusal is committed to the discretion of the district judge, and the denial of such a motion will only be reversed upon the showing of an abuse of such discretion. *See* United States v. Anderson, 160 F.3d 231, 233 (5th Cir. 1998).

Our Circuit has recognized that section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue. *See* United States v. Jordan, 49

9

F.3d 152, 157 (5th Cir. 1995). Thus, if a reasonable man, cognizant of the relevant circumstances surrounding a judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality, then the judge should find that section 455(a) requires his recusal. *See* <u>Anderson</u>, 160 F.3d at 233 (citing <u>In re Faulkner</u>, 856 F.2d 716, 721 (5th Cir. 1988)). Consequently, a district judge's failure to recuse himself in such circumstances would constitute an abuse of discretion.

At first blush, our decision in <u>United States v. Vadner</u>, 160 F.3d 263 (5th Cir. 1998), would seem to control our analysis of Judge McBryde's denial of Bremers' motion for recusal. But, upon further analysis, the additional unique factual circumstances of this case convince us that reliance on a comparison to the similar situation involved in <u>Vadner</u>, would be, as we stated in <u>Jordan</u>, inappropriate. In <u>Vadner</u>, we held that Judge McBryde was not required to recuse himself *sua sponte* merely because Vadner's attorney, the same Doug Greene representing Bremers, worked in the Federal Public Defender's office with lawyers who testified against Judge McBryde in hearings before the Judicial Council. In <u>Vadner</u>, we went on to say that, irrespective of the untimeliness of Vadner's motion for recusal, "we reject the suggestion that the mere fact that several attorneys with the Federal Public Defender's office offered testimony adverse to Judge McBryde . . . constitutes such an inherent and pervasive specter of impartiality that any

10

time a lawyer from the same office appears in Judge McBryde's court Judge McBryde's failure to recuse himself sua sponte would be error." Vadner, 160 F.3d at 264. Additionally, it bears mentioning that no motion for recusal of Judge McBryde was filed at the trial level in Vadner's case, and the issue was raised only on appeal.

Our decision in Vadner did not address the situation which is before us in this appeal; that is, a situation wherein the government effectively joined in Bremers' motions for recusal which were timely filed. Indeed, Bremers' first motion was filed prior to the Judicial Council's order directing the transfer of listed cases from Judge McBryde's docket, including the Bremers case, due to the appearance of partiality which would accompany Judge McBryde's continued involvement in cases in which a testifying attorney had appeared, was appearing, or would appear within a period of three years.

We hold that on the facts of this case, Judge McBryde abused his discretion and reversibly erred by failing to recuse himself from Bremers' case. We conclude that a reasonable person, cognizant of all the circumstances of this case as they existed at the time Bremers' motions for recusal were filed, would harbor doubts as to Judge McBryde's impartiality, especially where those circumstances include: (1) the fact that all parties, including the government, agreed that recusal was required; (2) the fact that the Fifth Circuit Judicial Council's February 9 order suggested that

11

Judge McBryde's own colleagues believed that there would be at least an appearance of impartiality if Judge McBryde were to continue presiding over a case involving any of the attorneys listed in Attachment "A"; (3) the fact that one of the Attachment "A" attorneys who testified against Judge McBryde, Peter Fleury, had appeared before Judge McBryde on at least one occasion on behalf of Bremers in this case; (4) the fact that Bremers' case was the only case listed on Attachment "B" that Judge McBryde was able to retain on his docket; (5) the fact that Judge McBryde's ability to retain that case arose exclusively from a misunderstanding concerning Peter Fleury's involvement in the case; and finally, (6) the fact that Bremers' case went to trial within one week of the Council's original order forbidding Judge McBryde from participating in the case. In light of the impassioned atmosphere surrounding entry of the Council's order, the reassignment of cases to other judges, Judge McBryde's handling of the motions for recusal, his tenacious insistence that he was not recused by the Council's "unlawful" order, and Judge McBryde's exclusive reliance upon his own subjective belief that he could remain impartial when denying the motions to recuse, we conclude that a reasonable person would most certainly harbor doubts as to Judge McBryde's ability to remain impartial. We also find Bremers' motion for recusal to be timely and well-taken in all other relevant respects.

Additionally, we also conclude that Judge McBryde abused his discretion by failing to recuse himself, absent severance, from the

12

trial of defendants Stewart and Snearly.  While neither of these two defendants were represented by the Federal Public Defender's office, they contended that since all defendants would be tried together, they would also suffer the consequences of any rancor the court felt toward Greene and his associates.[2]  Judge McBryde dismissed their "spillover prejudice" argument as meritless.  We agree with the defendants.  Absent severance, the entire case was infected with the same appearance of impartiality which plagued Judge McBryde's involvement in Bremers' individual case.  And again, we conclude that a reasonable person, aware of all the circumstances, would harbor doubts as to whether Judge McBryde

---

[2]  We note that Judge McBryde was already familiar with the charges against the three defendants and with their alleged involvement in a fraudulent scheme based upon his having presided over a related civil fraud case filed by the Securities and Exchange Commission against the defendants.  When the jury in that case returned its verdict, Judge McBryde made a statement to the effect of the following:

> I want to congratulate the jury on being able to work your way through this and I think you reached an entirely acceptable verdict.  I am not sure what I would have done, but I believe I would have done the same thing as you did.  I don't know that the dollar amounts would have been exactly the same, but I think what you did was about what I would have done if I had been deciding the facts.

Defendants allege that these statements alone constitute grounds for Judge McBryde's recusal.  We have held that opinions that a judge forms "based on information that he acquires in earlier proceedings are not subject to deprecatory characterizations as bias or prejudice, for it has long been regarded as normal and proper for a judge to sit . . . in successive trials involving the same defendant." United States v. Mizell, 88 F.3d 288, 300 (5th Cir. 1996)(quoting Liteky v. United States,510 U.S. 540, 551 (1994))(internal quotations and alterations omitted).  While these statements themselves do not require recusal, we consider this circumstance another factor in the totality of the circumstances which would be considered by an impartial observer.

13

could provide all three defendants with an impartial trial.  Thus, without severance, it was improper for Judge McBryde to preside over the trials of Stewart and Snearly, and his failure to recuse himself was an abuse of his discretion.

### III.  Prejudicial Joinder

Stewart argues that the district court erred when it denied his motion for relief from prejudicial joinder which he filed pursuant to Fed.R.Crim.P. 14.  The basis for his motion and his argument on appeal is, that during some of the conduct alleged in the indictment, Stewart no longer worked for the company that was the target of the indictment and was instead working for two other companies.

The appropriate standard of review for a claim of prejudicial joinder is the abuse-of-discretion standard.  *See* United States v. Faulkner, 17 F.3d 745, 758 (5th Cir. 1994).  In order to establish such an abuse, a defendant must establish that he received an unfair trial and that he suffered specific and compelling prejudice against which the trial court was unable to provide protection.  *See* United States v. Erwin, 793 F.2d 656, 665 (5th Cir. 1986); United States v. Romanello, 726 F.2d 173, 177 (5th Cir. 1984).  The mere possibility that a separate trial may have offered a better chance of acquittal is insufficient.  *See* United States v. Berkowitz, 662 F.2d 1127, 1132 (5th Cir. 1981).  In considering the exercise of its discretion, a district court must balance the

14

potential for prejudice against the public interest in joint trials where the cases against separate defendants arise from the same general transactions or occurrences, and it is appropriate for the court to factor in the interests in judicial economy. *See* Berkowitz, 662 F.2d at 1132.

Stewart claims that he was no longer working for the target company, and that he was not "part of the inner circle of those running" that company during part of the time alleged in the indictment. While Stewart may not have been working directly for the target company, the record establishes that he was continuing to market the unlawful oil and gas program investments through his new companies.

Contrary to his burden, and aside from his blanket assertion, Stewart has not demonstrated any specific and compelling prejudice which could justify our conclusion that the district court abused its discretion in denying Stewart's motion for relief from prejudicial joinder. We conclude that the interests of judicial economy warranted joinder of the three defendants for trial, and we hold that the district court did not abuse its discretion in failing to sever Stewart's trial.[3]

## IV. Conclusion

We find that Judge McBryde committed reversible error by

_____

[3] We note, however, that severance of defendants Stewart and Snearly would have been an appropriate remedy to cure the spillover prejudice which resulted from Judge McBryde's failure to recuse himself from Bremers' case.

failing to recuse himself from Bremers' case, and without severance, he also committed reversible error in failing to recuse himself from Stewart's and Snearly's cases. We further find that there would be no error were these three defendants joined for trial before a different district judge upon remand.

Accordingly, we VACATE the convictions and sentences of defendants Bremers, Stewart, and Snearly, and REMAND this case to the Northern District of Texas. We further direct the Chief Judge of the Northern District of Texas to reassign this case for a new trial before a different district judge in that district.