**UNITED STATES of America**

v.

**Torrance MARSHALL.**

**No. 4:99–CR–236–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 9, 1999.

Reed C. O'Connor, Attorney at Law, U.S. Attorney's Office, Fort Worth, TX, for U.S.

Douglas C. Greene, Attorney at Law, Federal Public Defender, Fort Worth, TX, for Torrance Marshall, defendant.

*MEMORANDUM OPINION and ORDER*

McBRYDE, District Judge.

At the conclusion of a hearing held November 12, 1999, on the motion of defen-

dant, TORRANCE MARSHALL, ("Marshall") asking the undersigned to recuse, the court informed the parties that the motion is being denied and that an opinion would follow.

## Procedural History

On October 14, 1999, the government, acting through the office of the United States Attorney for the Northern District of Texas, filed a one-count information against Marshall charging him with possessing counterfeit obligations in violation of 18 U.S.C. § 473. Marshall made his initial appearance before United States Magistrate Judge Charles Bleil on November 8. At that time, Judge Bleil signed an order appointing the Federal Public Defender for the Northern District of Texas to represent Marshall in this action. Assistant Federal Public Defender Douglas C. Greene was present on behalf of Marshall at the initial appearance. An order signed by Judge Bleil on November 8 directed Marshall to appear before the undersigned at 9:00 a.m. on November 12 for future proceedings. At 8:57 a.m. on November 12 Marshall, acting through Mr. Greene, filed the motion to recuse.

A hearing was conducted on the motion to recuse on November 12. Marshall, through Mr. Greene, offered as evidence in support of his motion copies of a transcript of proceedings conducted November 5,

1999, in No. 4:99–CR–214–A, styled "United States v. Walker," and an order and public reprimand signed on December 31, 1997, by the Honorable Henry A. Politz, then the Chief Judge of the United States Court of Appeals for the Fifth Circuit. The government offered no evidence in connection with the motion. Its attorney informed the court at the hearing that the government opposed the motion and urged the court to deny it.

## The Motion to Recuse

Marshall moved "the court to reassign this case to another Judge within the Northern District of Texas and recuse himself, under 28 U.S.C. § 455(a)." Mot. at 1. He alleged that:

1. Marshall's attorney, Mr. Greene, is an assistant federal public defender in the office of the Federal Public Defender for the Northern District of Texas. In August 1997, Ira Kirkendoll, the Federal Public Defender for the Northern District of Texas, Paul Stickney, former first assistant federal public defender for the Northern District of Texas, and three other present or former assistant federal public defenders for the Northern District of Texas testified against the undersigned at a proceeding conducted in August, September, and October 1997 by a special committee appointed by the Honorable Henry A. Politz, then the Chief Judge of the United States Court of Appeals for the Fifth Circuit.[1] One of the testifying assistant fed-

---

1. The assignment Judge Politz gave the special committee was to inquire into the merits of decisions and procedural rulings of this judge. The 1997 special committee proceeding and the orders that resulted, which purportedly were conducted and done under the authority of 28 U.S.C. § 372(c), are sequels to the Fifth Circuit's rulings in July 1997 in favor of the undersigned against Judge Politz and the Judicial Council in the mandamus action that was resolved by the opinion in *In re McBryde*, 117 F.3d 208 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998). *See United States v. Anderson,* 160 F.3d 231, 238 (5th Cir.1998) (Jones, J., dissenting); *United States v. Avilez–Reyes,* 160 F.3d 258, 263 (5th Cir.1998) (Jones, J., dissenting). The actions taken by Judge Politz and those aligned with him against the undersigned were initiated because this judge disregarded a threat of Judge

Politz that he would cause the entire judicial career of this judge to be explored if he protested the unlawful case transfers made by the Honorable Jerry Buchmeyer, the Chief Judge of this court, that are discussed in *In re McBryde*. This judge protested, and Judge Politz hired a former Whitewater prosecutor and his legal staff and caused a special committee and the newly hired lawyers to investigate this judge's entire judicial career. The validity of the special committee proceeding and the orders that resulted from it are the subject of constitutional and other challenges that are being made in litigation now pending in the United States District Court for the District of Columbia as No. 1:98CV02457–CKK, styled "Honorable John H. McBryde, United States District Judge for the Northern District of Texas, Plaintiff, v. Committee to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the

eral public defenders, Matt Golla, was transferred to the Dallas office of the Federal Public Defender due to an encounter involving this judge.

2. On December 31, 1997, as a direct result of the testimony given before the special committee by Mr. Kirkendoll, his former first assistant federal public defender, and another assistant federal public defender, Judge Politz, on behalf of the Judicial Council for the Fifth Judicial Circuit in connection with a Judicial Council proceeding resulting from the inquiry of the special committee, signed an order that, *inter alia*, prohibited the undersigned, for a period of three years, from participating in any case in which any of the twenty-three attorneys named in an attachment to the order were involved or thereafter gave an initial notice of appearance.[2] The list included the names of Mr. Kirkendoll, Mr. Stickney, and the three other assistant federal public defenders who had testified against the undersigned.[3] As a result, Mr. Greene is "the only seasoned Ft. Worth Federal Public Defender who is currently eligible to appear in front of" this judge. Mot. at 2. "Judge McBryde has directed the Fort Worth Magistrate Judge not to appoint the federal Public defender's Office [sic] in any cases assigned to Judge McBryde." *Id.* at 4.

3. In mid to late September 1999, a Fort Worth newspaper published an arti-

cle in which Mr. Greene was quoted as having said that the undersigned was "back ... with a vengeance." *Id.* at 3. The publication of this article was shortly after the expiration of a one-year suspension of case assignments to the undersigned that was directed by another part of the order Judge Politz signed December 31, 1997.

4. In early November 1999, the court, acting through the undersigned, imposed discipline on Mr. Greene under the authority of Rule 57.8(b) of the local criminal rules of this court for engaging on November 5 in conduct unbecoming a member of the bar of this court and his failure to comply with an order of the court. Initially, the court ruled that Mr. Greene was guilty of contempt of court by reason of his conduct, but, by an order signed November 9, 1999, the findings of contempt were withdrawn, and the discipline, in the form of two $150.00 fines, was imposed under the authority of the local rule. Included in the reasons why the discipline was imposed was a conclusion by the court that Mr. Greene intentionally made false representations to the court. Mr. Greene maintains that the discipline was factually unjustified. This discipline was imposed in the case of *United States v. Walker*, which, to the best of Mr. Greene's recall, was the first case assigned to this judge and han-

---

United States, et al., Defendants." However, for the purpose of this memorandum opinion and order, the court assumes, *arguendo,* that the order signed on December 31, 1997, by Judge Politz for the Judicial Council is valid and enforceable in all respects.

**2.** The part of the December 31, 1997, order to which Marshall refers reads as follows:

Pursuant to 28 U.S.C. § 372(c)(6)(B)(vii), Judge McBryde, for a period of three (3) years from the effective date of this Order, is not to participate in (i) cases now pending before him (other than any as to which there are appellate proceedings) in which any of the attorneys listed on Attachment A are currently involved, and (ii) any and all cases filed after the effective date of this order in which the initial notice of appearance includes any of the attorneys listed on Attachment A.

Def.'s Ex. 2 at 2–3. This part of the order was implemented by an order Judge Politz signed for the Judicial Council on February 9, 1998, directing this court to comply with the order and listing cases then pending before the undersigned that were thought to be affected by the order. The list, in the form of an Attachment "B" to the order, was revised twice.

**3.** Eighteen of the twenty-three lawyers named on the list were attorneys who presently or formerly were employed as attorneys for the federal government and who had testified against the undersigned at the special committee proceeding or, with one exception, whose names had been provided as possible witnesses. Five were attorneys in the office of the Federal Public Defender and thirteen were present or former United States attorneys or assistant United States attorneys.

dled by the Federal Public Defender's office after expiration of the one-year suspension of case assignments to this judge. Mr. Greene's appearance before this judge on November 5 "was only the second time that members of the Federal Public Defender's office had appeared in front of Judge McBryde since he began receiving new cases" and "was also our first hearing of any length in front of Judge McBryde on any new cases."[4] *Id.* at 3–4.

5. Mr. Greene filed a motion to recuse the undersigned from presiding over the case of *United States v. Bremers* on the docket of this court "for this very same reason,"[5] *id.* at 5, which was denied. "[O]n the very day Judge McBryde issued his order sanctioning Greene," the Fifth Circuit rendered an opinion "reversing the convictions of Bremers and his two co-defendants." *Id.*

Marshall reasons from the foregoing facts that "[a] neutral reasonable observer could easily form the conclusion that the court can not [sic] be impartial in cases involving members of the Federal Public Defenders [sic] office and in particular involving Mr. Greene." *Id.*

*The Recusal Statute and General Rules*

The statute upon which Marshall relies reads as follows:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a).

█ A § 455(a) movant "must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The Fifth Circuit has held in no uncertain terms that, as a gen-

eral rule, the "impartiality test" has to do with the judge's presumed attitude toward a party to the litigation, not toward a party's attorney. *Davis v. Board of Sch. Comm'rs of Mobile County*, 517 F.2d 1044, 1052 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). *See also Trevino v. Johnson*, 168 F.3d 173, 179–80 (5th Cir.), *cert. denied*, ——— U.S. ———, 120 S.Ct. 22, ——— L.Ed.2d ——— (1999) (affirming district court's denial of motion to recuse under § 455(a) based on alleged bias or prejudice or lack of partiality by the undersigned against the attorney for a party based on the circumstance that the attorney was named as a witness to testify against the judge); *Henderson v. Department of Pub. Safety & Corrections*, 901 F.2d 1288, 1296 (5th Cir.1990) (citing *Davis* with approval in a case in which recusal was sought under both 28 U.S.C. §§ 144 & 455(a) because of the judge's relationship to an attorney for a party). The Fifth Circuit is not alone in applying this rule. *See, e.g., Standing Comm. v. Yagman*, 55 F.3d 1430, 1444 (9th Cir.1995); *Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990) (noting that "it is insufficient to rely on 'clashes between court and counsel' as the basis of a disqualification motion"); *In re Cooper*, 821 F.2d 833, 841 (1st Cir.1987); *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985).

█ Title 28, U.S.C. § 455(a) " 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.' " *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986)). For example, a judge is not disqualified merely because a litigant sues or threatens to sue him. *See Matter*

---

**4.** The motion fails to disclose that members of the Federal Public Defender's office have made a number of appearances before this judge since the December 31, 1997, order signed by Judge Politz, and, again, since the

February 9, 1998, order signed by Judge Politz.

**5.** The motion is unclear as to the meaning of the words "this very same reason."

*of Hipp, Inc.,* 5 F.3d 109, 116 (5th Cir. 1993); *Olsen v. Wainwright,* 565 F.2d 906, 907 (5th Cir.1978); *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Jones v. City of Buffalo,* 867 F.Supp. 1155, 1163 (W.D.N.Y. 1994); *United States v. Blohm,* 579 F.Supp. 495, 505 (S.D.N.Y.1983); *In re Martin–Trigona,* 573 F.Supp. 1237, 1243 (D.Conn.1983), *appeal dism'd,* 770 F.2d 157 (2d Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

■ A judge is not required to recuse simply because a party, or an attorney for a party, personally attacked the judge in other proceedings. *E.g., United States v. Olander,* 584 F.2d 876, 887 (9th Cir.1978) (defendant had been leader in efforts to impeach the judge, including newspaper and television appearances; motion to disqualify denied, and affirmed on appeal), *vacated on other grounds,* 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979). "Prior written attacks upon a judge are likewise legally insufficient to support a charge of bias or prejudice on the part of a judge toward the author." *United States v. Bray,* 546 F.2d 851, 858 (10th Cir.1976). "A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against him. . . ." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3542, at 577–78 (2d ed.1984). In *Cooley,* the Tenth Circuit noted, by quoting from an earlier decision, that " '[t]he mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced,' " 1 F.3d at 994 n. 5, and added that:

> The same is true regarding an objective person, knowing all the facts, assessing whether the judge's impartiality may *reasonably* be questioned. Any other conclusion would allow defendants to cause the recusal of judges simply by making scurrilous and disparaging re-

marks or charges about them. Permitting parties to manipulate the system with falsehoods or insults in such a manner would be a bizarre application of § 455(a) . . . .

*Id.* In *Bray,* the failure to recuse was affirmed even though the party who sought recusal had

> obtained 2000 signatures of persons desiring the removal of the judge; . . . had written an article calling for the impeachment of the judge; . . . had a prior case dismissed by the judge; . . . had written a protest telegram against the judge; and . . . had filed a brief with the court accusing the judge of bribery, conspiracy, and the obstruction of justice.

546 F.2d at 857.

■ Moreover, a judge should not recuse when there is no legal reason for him to do so. *Cooley,* 1 F.3d at 994 (quoting *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987)). *See also Bray,* 546 F.2d at 857. If a motion to recuse is not well-grounded, it should be denied because, as the Seventh Circuit has explained:

> A judge may decide close calls in favor of recusal. But there must first be a close call. As we put it in *Suson v. Zenith Radio Corp.,* 763 F.2d 304, 308–09 n. 2 (7th Cir.1985), a "district judge is . . . obligated not to recuse himself without reason just as he is obligated to recuse himself when there is reason."

*New York City Hous. Dev. Corp. v. Hart,* 796 F.2d 976, 980–81 (7th Cir.1986). *See also Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir.1995) ("a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require").

### The Recent Series of Fifth Circuit Opinions Involving Contentions that the Undersigned Erred in Failing to Recuse

The special committee proceeding and the feature of the order Judge Politz signed December 31, 1997, prohibiting the undersigned from participating in cases

involving named attorneys have generated ten Fifth Circuit opinions in which an issue of whether the undersigned erred in failing to recuse was presented. Eight of the opinions dealt with recusal contentions made by the office of the Federal Public Defender for the Northern District of Texas, and two with recusal issues raised by private attorneys. Because of their possible pertinence to Marshall's motion, those ten opinions are discussed below in the sequence in which they were issued when it is known, or, as to the three cases that were decided on the same date, November 10, 1998, in the sequence in which they appear in the reporter volume.

1. *United States v. Sanford,* 157 F.3d 987 (5th Cir.1998), *cert. denied,* 119 S.Ct. 1500 (1999).

Appellant Sanford's trial attorney was one of the assistant federal public defenders who testified against the undersigned at the special committee proceeding. Sanford did not move for recusal in the district court, but he asked the Fifth Circuit to vacate his sentence and to remand for resentencing before a different judge on the ground that, because of the testimony given by his attorney, this judge should have recused under 28 U.S.C. § 455(a). The Fifth Circuit affirmed Sanford's sentence, holding that Sanford had not raised the recusal issue timely. The Court said that it could "see no reason to find a plain error under these facts." *Sanford,* 157 F.3d at 989.

2. *United States v. Anderson,* 160 F.3d 231 (5th Cir.1998).

*Anderson* is the first reported of the three Fifth Circuit opinions issued on November 10, 1998, involving a recusal issue concerning the undersigned. Anderson's trial attorney was one of the assistant federal public defenders who testified against this judge. After Anderson entered a plea of guilty on July 11, 1997, to bank robbery, his trial attorney testified

against this judge in the special committee proceeding during the week of August 25, 1997. Thereafter, on October 9, 1997, one day prior to his sentencing, Anderson moved for recusal of this judge and assignment of the case to another judge. The recusal motion was denied, and on October 10, 1997, Anderson was sentenced.

By an opinion authored by Circuit Judge Reynaldo G. Garza, in which Circuit Judge Harold R. DeMoss joined, Anderson's sentence was vacated and the case was remanded for reassignment to a different judge for resentencing. The majority concluded that the undersigned's impartiality might reasonably be questioned because Anderson's attorney testified adversely to him in the special committee proceeding, and buttressed its conclusion by noting the non-participation feature of the order Judge Politz signed on behalf of the Judicial Council on December 31, 1997.

The third member of the panel, Circuit Judge Edith H. Jones, dissented, pointing out that her "colleagues' interpretation of § 455(a) in these cases conflicts with our precedents...." *Anderson,* 160 F.3d at 235 (Jones, J., dissenting).

3. *United States v. Avilez–Reyes,* 160 F.3d 258 (5th Cir.1998).

*Avilez–Reyes* is the second of the November 10, 1998, Fifth Circuit opinions pertaining to recusal. In principle, it is identical to *Anderson.* Avilez–Reyes pleaded guilty; the assistant federal public defender who represented him at trial then testified against the undersigned at the special committee proceeding; thereafter, a motion to recuse was filed; the motion was denied; and, the defendant was sentenced. The Fifth Circuit panel that considered *Avilez–Reyes* was the same panel that considered *Anderson.* The majority opinion vacated the sentence and remanded for resentencing before another judge. Circuit Judge DeMoss[6] authored the majority opinion this time. Circuit Judge

---

**6.** Judge DeMoss, while serving as a member of the Judicial Council, participated in issuing

the Judicial Council order of December 31, 1997. *See infra* at 775 n. 14.

Jones dissented for the same reasons she gave in *Anderson.*

### 4. *United States v. Vadner,* 160 F.3d 263 (5th Cir.1998).

*Vadner* is the third of the November 10, 1998, Fifth Circuit opinions pertaining to recusal. Vadner pleaded guilty to bank fraud on January 16, 1998, and was sentenced by the undersigned on April 24, 1998. He was provided trial representation by Assistant Federal Public Defender Greene, the same assistant who is providing representation to Marshall. Vadner maintained on appeal that the undersigned should have recused himself *sua sponte* pursuant to 28 U.S.C. § 455(a), because of the testimony Mr. Greene's bosses[7] and fellow assistant federal public defenders gave against the undersigned in August 1997.

The Fifth Circuit, with alternative holdings, unanimously affirmed the district court's judgment. First, the Court held that Vadner did not timely raise the issue of recusal. Alternatively, the Court held that "even if it had been timely raised, we reject the suggestion that the mere fact that several attorneys with the Federal Public Defender's office offered testimony adverse to Judge McBryde in a proceeding before the Judicial Council constitutes such an inherent and pervasive specter of impartiality that any time a lawyer from the same office appears in Judge McBryde's court Judge McBryde's failure to recuse himself *sua sponte* would be error."[8] *Vadner,* 160 F.3d at 264.

### 5. *Trevino v. Johnson,* 168 F.3d 173 (5th Cir.), *cert. denied,* 120 S.Ct. 22 (1999).

This is one of two of the ten appeals under discussion that involved a trial attorney who was not a federal public defender. Trevino's trial attorney, Art Brender, was designated as an attorney who would testify at the special committee proceeding, but he was not called to testify. However, Mr. Brender's name was one of the twenty-three in the list of attorneys accompanying the order Judge Politz signed December 31, 1997. The operation of that part of the December 31, 1997, order did not go into effect until February 9, 1998. By then, Trevino had filed a motion to recuse based on the allegation that the undersigned had a potential bias and prejudice against Trevino's attorney, the motion to recuse was denied, and the undersigned adjudicated adversely to Trevino his petition for a writ of habeas corpus complaining of a death sentence that was imposed on him by a court of the State of Texas.

In an opinion authored by Chief Judge Carolyn King, in which Circuit Judge E. Grady Jolly joined, the panel rejected Trevino's complaint that the undersigned abused his discretion in denying Trevino's recusal motion. The majority recognized, and gave effect to, the general rule that potential bias by a judge against a party's attorney does not require a judge to recuse under § 455(a). The court elaborated, saying:

> A showing of potential bias by a judge against a party's attorney does not generally suffice to require a judge to disqualify himself or herself under § 455(a). Rather, the general rule, adopted in this and several other circuits, is that "an appellate court, in passing on questions of disqualification[,] ... should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel."

---

**7.** Marshall's motion to recuse indicates that Mr. Greene considers that two of the assistant federal public defenders who testified against the undersigned as well as the Federal Public Defender himself were his bosses, supervisors, or superiors.

**8.** The Fifth Circuit follows the rule that an alternative holding is binding precedent and not *obiter dictum. Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 465 (5th Cir.1991). *See also Gaspard v. Offshore Crane & Equip., Inc.,* 106 F.3d 1232, 1237–38 (5th Cir.1997), *cert. denied,* 522 U.S. 1047, 118 S.Ct. 691, 139 L.Ed.2d 636 (1998).

*Davis v. Board of Sch. Comm'rs,* 517 F.2d 1044, 1052 (5th Cir.1975); *see FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 576 n. 13 (7th Cir.1989) ("Friction between court and counsel does not constitute bias."); *In re Cooper,* 821 F.2d 833, 838 (1st Cir.1987); *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir.1983); *United States v. Sibla,* 624 F.2d 864, 869 (9th Cir.1980). Bias against a party's attorney does not require disqualification unless "it can also be shown that such a controversy would demonstrate a bias for or against the party itself." *Henderson v. Department of Pub. Safety & Corrections,* 901 F.2d 1288, 1296 (5th Cir.1990) (citing *Davis* ); *see also In Re Cooper,* 821 F.2d at 839 ("It is true that occasionally exceptional circumstances do arise where a judge's attitude toward a particular attorney is so hostile that the judge's impartiality toward the client may reasonably be questioned."); *In re Beard,* 811 F.2d 818, 830 (4th Cir.1987) ("Bias against an attorney is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself.") Trevino does not allege any circumstances suggesting that a reasonable person would harbor doubts about Judge McBryde's impartiality toward him; his only argument is based on the relationship between Judge McBryde and Brender. We find that a reasonable, well-informed observer would not harbor doubt about Judge McBryde's impartiality in adjudicating Trevino's habeas claim, where any potential bias would have been directed against Trevino's attorney and there is no suggestion of bias directed at Trevino himself.

*Trevino,* 168 F.3d at 179–80.

Circuit Judge DeMoss dissented, expressing his view that the undersigned should have recused. He thought *Anderson* and *Avilez–Reyes* controlled the

result in *Trevino.* In support of his dissent, Judge DeMoss placed reliance on rather detailed aspects of the special committee and related proceedings that were conducted against the undersigned.

6. *United States v. Waskom,* 179 F.3d 303 (5th Cir.), *cert. denied,* 1999 WL 970761 (U.S. Nov.29, 1999) (No. 99–6631).

Taylor, one of the four defendants in *Waskom,* was represented at the trial level by one of the assistant federal public defenders who testified against this judge in August 1997. The Fifth Circuit panel that decided *Waskom* consisted of Chief Judge King and Circuit Judges Politz and Benavides. After concluding that the district court committed a sentencing error that required resentencing of all four defendants, the panel added that the resentencing of defendant Taylor (but not the other three defendants) should be before a different district court judge in the Northern District of Texas because the undersigned should have granted Taylor's motion to recuse under 28 U.S.C. § 455(a) on the ground that his attorney testified against this judge at the special committee proceeding. As precedent for its recusal holding, the panel, by an opinion authored by Circuit Judge Benavides[9], relied on the *Anderson* and *Avilez–Reyes* opinions. No other case authority was cited.

7. *United States v. Griffin,* No. 98–10164, slip op., 1998 WL 912167 (5th Cir. Dec.15, 1998).

This was an unpublished *per curiam* opinion. Citing *Vadner* as authority, the Court held that "[t]he district court was not required to *sua sponte* recuse himself on the ground that Griffin's attorney [Mr. Greene] worked in the Federal Public Defender's office with lawyers who had testified against the judge in proceedings before the Judicial Council of the Fifth Circuit." *Griffin,* No. 98–10164, slip op. at 1–2, 1998 WL 912167.

---

**9.** Like Judge DeMoss, Judge Benavides served as a member of the Judicial Council when the

December 31, 1997, order was formulated and issued. *See infra* at 775 n. 14.

8. *United States v. Shearer,* No. 97–11299, slip op. (5th Cir. Dec.29, 1998)

This was another unpublished *per curiam* opinion. Shearer urged on appeal that the judgment of the district court, acting through the undersigned, should be reversed because Shearer's attorney, an assistant federal public defender, was subpoenaed to provide testimony adverse to the undersigned. The Court affirmed, determining that, by entering into an unconditional guilty plea after his recusal motion was denied, Shearer waived his right to challenge the denial of the motion.

9. *United States v. Burgos,* No. 97–11398, slip op. (5th Cir. May 11, 1999).

*Burgos* is the second of the two appeals involving private attorneys. By an unpublished *per curiam* opinion, an adjudication by this court, acting through the undersigned, was vacated on the ground that Burgos's motion to recuse, based on the fact that Burgos's attorney, Arch McColl, testified adversely to the undersigned in the special committee proceeding, should have been granted. No other reasoning was provided in the opinion, and the only two authorities cited were the *Anderson* and *Avilez–Reyes* cases.

10. *United States v. Bremers,* No. 98–10716, 1999 WL 1016309 (5th Cir. Nov.9, 1999).

This is the November 9, 1999, opinion of the Fifth Circuit to which Marshall referred in his motion to recuse. The opinion was authored by Circuit Judge DeMoss for a panel consisting of Circuit Judges Politz, DeMoss, and Benavides.

The undersigned presided over the criminal trial of appellants Bremers, Snearley, and Stewart. Bremers was represented at trial by Assistant Federal Public Defender Greene, the same attorney who is providing representation to Marshall. Snearley and Stewart had private attorneys. Peter Fleury, an assistant federal public defender who testified against this judge, and whose name was on the December 31, 1997, list of attorneys, appeared with Bremers before the United States Magistrate Judge on September 18, 1997, at Bremers' initial appearance, but did not thereafter appear in any proceeding on behalf of Bremers.[10] On September 26, 1997, Mr. Greene appeared before this judge on Bremers' behalf for arraignment, and is the only attorney who thereafter appeared in the trial court for Bremers.

The trial of Bremers, Snearley, and Stewart was scheduled to commence on February 17, 1998. On February 2, Bremers, through Mr. Greene, filed a motion to recuse pursuant to 28 U.S.C. § 455(a) on the ground that his superiors and fellow attorneys in the office of the Federal Public Defender gave testimony against this judge in August 1997. The motion alleged that Mr. Greene had "been informed by Mr. Kirkendoll[ ] that he has altered his original position regarding whether or not the entire firm [Federal Public Defender's office] needed to be included in a motion to recuse this court on representing defendants" and that "Mr. Kirkendoll, and this counsel, are of the opinion that since one of the members in the office, in particular, Mr. Kirkendoll, has provided testimony adverse to this court, then it should be a 'firm wide' recusal." 2/2/98 Mot. to Recuse and Br. at 1–2, *United States v. Bremers,* No. 4:97–CR–111–A (N.D.Tex.). Bremers, through Mr. Greene, filed another motion to recuse and brief on February 12 in which he basically repeated the allegations he made in the February 2 version, and added allegations pertaining to the order Judge Politz signed for the Judicial Council on December 31, 1997, which were made public on February 9, 1998.[11]

---

**10.** The Fifth Circuit opinion incorrectly said that the initial appearance of Bremers with Mr. Fleury was before the undersigned. *See* 9/18/97 Minute Order, *United States v. Bremers,* No. 4:97–CR–111–A (N.D.Tex.); *cf. Unit-* ed States v. Bremers, 195 F.3d 221, 223–24 (5th Cir.1999).

**11.** Interestingly, Bremers alleged in the amended motion that "[t]he defendant would

As the panel opinion reflects, on February 9, 1998, the undersigned was told by an order signed by Judge Politz for the Judicial Council that he was prohibited from presiding over the *Bremers* case, then shortly thereafter was told by a substitution made by the Judicial Council of Attachment "B" to the order that he was not prohibited from presiding over the case, and then was specifically told by the Chief Judge of this court that the Judicial Council determined that the December 31, 1997, order did not prevent the undersigned from presiding over the case. These exchanges occurred about a week before the date when the trial of the rather complex *Bremers* case was scheduled to commence.

Defendants Snearley and Stewart joined in by filing their own motions to recuse, both derivative of the motion of Bremers. After obtaining responses to the various motions to recuse, the court held a hearing on the motions on February 13, 1998. As the Fifth Circuit notes in its opinion, the government, through its trial attorney and two other assistant United States attorneys who were in the courtroom, expressed agreement with Bremers' motion to recuse. Indeed, Assistant United States Attorney Marc Barta, the attorney in charge of the Fort Worth office of the United States Attorney (who had testified before the special committee against the undersigned), stated on the record that if this judge denied Bremers' motion to recuse there was a possibility that "the government would stipulate error if a defendant appealed from an adverse judgment in this case." *United States v. Bremers*, 195 F.3d 221, 225 (5th Cir.1999).[12] The motions were denied, and the case went to trial as scheduled.

According to the *Bremers* opinion, the facts and circumstances that obligated this judge to recuse included:

(1) the fact that all parties, including the government, agreed that recusal was required; (2) the fact that the Fifth Circuit Judicial Council's February 9 order suggested that Judge McBryde's own colleagues believed that there would be at least an appearance of impropriety if Judge McBryde were to continue presid-

---

assert that this order by the Judicial Council [a February 9, 1998, order signed by Judge Politz on behalf of the Judicial Council implementing the non-participation feature of the order he had signed December 31, 1997] has no effect on the law of recusal." 2/12/98 Mot. to Recuse and Br. at 4, *Bremers* (No. 4:97–CR–111–A). Bremers, through Mr. Greene, also acknowledged that the non-participation feature of the December 31, 1997, order did not apply to the case inasmuch as Mr. Greene, rather than a testifying assistant federal public defender, represented Bremers.

12. AUSA Barta, the assistant United States attorney who threatened stipulation of error at the February 13, 1998, hearing, authored the brief the government initially filed in the Fifth Circuit in the *Avilez–Reyes* case. He indeed did assert that the undersigned erred in not granting the Federal Public Defender's motion to recuse in that case. Br. of the United States at 8, *United States v. Avilez–Reyes*, 160 F.3d 258 (5th Cir.1998) (No. 97–11392). AUSA Barta went on in the *Avilez–Reyes* brief to suggest to the Fifth Circuit that it send a "clear message that Judge McBryde erred in failing to recuse himself" and that the Fifth Circuit should squarely confront and announce "Judge McBryde's error." *Id.* at 8–

9. Thereafter, the government was granted leave to file a substitute brief in *Avilez–Reyes*. A different assistant United States attorney filed the substitute brief in which arguments were made that the undersigned did not err in declining to recuse. Am.Br. of the United States at 7–16, *Avilez–Reyes* (No. 97–11392). Personnel of the United States Attorney's Office apparently were struggling with the issue of whether the government should align itself with the Federal Public Defender's office in its attempt to prevent this judge from presiding over criminal cases. The three assistant United States attorneys who were questioned at the February 13, 1998, hearing in *Bremers* on the subject of recusal were evasive as to what position the government planned to take on whether the undersigned would be disqualified from participating in future criminal cases because members of the United States Attorney's office testified against him before the special committee. 2/13/98 Tr. at 8–15, *United States v. Bremers*, No. 4:97–CR–111–A (N.D.Tex.). Not until the substitute brief was filed in *Avilez–Reyes* did the government commit that it was not taking the position that recusal would be required.

ing over a case involving any of the attorneys listed in Attachment "A"; (3) the fact that one of the Attachment "A" attorneys who testified against Judge McBryde, Peter Fleury, had appeared before Judge McBryde on at least one occasion on behalf of Bremers in this case; (4) the fact that Bremers' case was the only case listed on Attachment "B" that Judge McBryde was able to retain on his docket; (5) the fact that Judge McBryde's ability to retain that case arose exclusively from a misunderstanding concerning Peter Fleury's involvement in the case; and finally, (6) the fact that Bremers' case went to trial within one week of the Council's original order forbidding Judge McBryde from participating in the case.

*Id.* at 226–27. The panel added:

In light of the impassioned atmosphere surrounding entry of the Council's order, the reassignment of cases to other judges, Judge McBryde's handling of the motions for recusal, his tenacious insistence that he was not recused by the Council's "unlawful" order, and Judge McBryde's exclusive reliance upon his own subjective belief that he could remain impartial when denying the motions to recuse, we conclude that a reasonable person would most certainly harbor doubts as to Judge McBryde's ability to remain impartial.

*Id.* In footnote 2 of the opinion, the panel made reference to comments the undersigned made to the jury in a civil action growing out of the same conduct that gave rise to the criminal case, and noted that "[w]hile these statements themselves do not require recusal, we consider this circumstance another factor in the totality of the circumstances which would be considered by an impartial observer." *Id.* at 227 n. 2.

The reasoning in the *Bremers* opinion is puzzling, as are statements made by the author of the opinion. For example, the

statement in the opinion that the "Bremers' case was the only one listed on Attachment 'B' that Judge McBryde was able to retain on his docket," *id.* at 227, is a distortion. Rather, the *Bremers* case was kept on this judge's docket because it was removed from Attachment "B," and he went forward with it because he was assured that the Judicial Council did not intend it to be on Attachment "B." Equally unsupported is the statement that "Judge McBryde's ability to retain that case arose exclusively from a misunderstanding concerning Peter Fleury's involvement in the case." *Id.* The record reflects that this judge retained the *Bremers* case because of Mr. Fleury's lack of involvement in the case. The misunderstanding concerning his involvement in the case is the reason why it initially was listed on Attachment "B," not the reason why this judge kept the case. Nor can any sense be made of the panel's reliance on "the fact that Bremers' case went to trial within one week of the Council's original order forbidding Judge McBryde from participating in this case," *id.*, as support for a conclusion that there was basis for doubt as to this judge's impartiality. And, only the author of the opinion can possibly know what he meant by the words "impassioned atmosphere," "tenacious insistence," "exclusive reliance," and "subjective belief," *id.*, as they are used in the opinion's supplemental statement of pertinent circumstances.

Moreover, the opinion totally ignores the rule generally applied, and followed by the Fifth Circuit until November 10, 1998, that recusal is not required based strictly on a judge's attitude toward a party's attorney. And, notwithstanding its implied criticism of the undersigned for attempting to fully develop the record on the matter of whether he should recuse, the panel in *Bremers* does not mention the rule that a judge whose recusal is sought is not to treat lightly his obligation to perform his duties as a judge. By giving effect to the fact that the attorney for the government agreed to the recusal,[13] the panel effective-

---

**13.** The opinion fails to note that in the government's brief on appeal in *Bremers* it vigorously contested the claims of the defendants

that the undersigned should have recused. Br. of the United States at 34–39, *United*

ly rejected the universally accepted rule that if a motion to recuse is not well-grounded, the proper resolution of the motion, both as a matter of law and judicial ethics, is to deny it, and the corollary rule that a judge is as obligated to sit where there is no legitimate reason to recuse as he is to recuse when the law and facts require recusal. *Bremers* seems to advocate that the parties to litigation can select a judge by joinder in a motion asking that the presiding judge recuse.

Furthermore, no rationale can justify the significance the author of the *Bremers* opinion attached to the comments the undersigned made to the jury after it returned a verdict in the civil case growing out of basically the same facts involved in the criminal case. *See id.* at 227 n. 2. Finally, there is no basis in any record for the statement that "the Fifth Circuit Judicial Council's February 9 order suggested that Judge McBryde's own colleagues believed that there would be at least the appearance of impropriety if Judge McBryde were to continue presiding over a case involving any of the attorneys listed in Attachment 'A'...."[14]

### Analysis

■ Marshall's motion to recuse makes reference to facts that could bear on the attitude of this judge toward the Federal Public Defender of the Northern District of Texas and attorneys in that office. There is no mention of any fact that could

bear on the attitude of this judge toward Marshall, or the actual or perceived ability of this judge to be completely fair and impartial in rendering decisions affecting Marshall. Even if all facts alleged by Marshall were to be accepted at face value, they would not support a conclusion that a reasonable man, with knowledge of those circumstances, would harbor doubts about the undersigned's ability to impartially adjudicate Marshall's rights.

An application to this case of the law of the Fifth Circuit as it existed pre-November 10, 1998, leaves no doubt as to the proper outcome—a denial of the motion. All of the facts on which Marshall relies in support of his request for recusal pertain to the relationships and dealings between the undersigned and Marshall's attorney or attorneys with whom he is associated. None pertain to Marshall in any respect. Nor does Marshall assert any facts that would justify a finding of constructive bias or prejudice by this judge against Marshall or against a group of which Marshall is a part. *See Trevino,* 168 F.3d at 180 n. 2.

Do *Anderson* and *Avilez–Reyes* and their progeny (*Waskom, Burgos,* and *Bremers*) require that a different result be reached? The court believes not. In the first place, they are factually distinguishable. Marshall's attorney did not testify at the special committee proceeding, as did the attorneys for the defendants in *Anderson, Avilez–Reyes, Was-*

---

*States v. Bremers,* 195 F.3d 221 (5th Cir. 1999).

**14.** Circuit Judge DeMoss, the author of the *Bremers* opinion, made a similar statement in the majority opinion in *Avilez–Reyes.* 160 F.3d at 259 (saying that the December 31, 1997, order signed by Judge Politz "is a clear indication that our colleagues on the Judicial Council felt there would be an appearance of impropriety in Judge McBryde continuing to preside over attorneys who had recently testified against him"). A like statement was made in the majority opinion in *Anderson* in which Judge DeMoss joined. 160 F.3d at 234 (saying that the December 31, 1997, order "demonstrates that a group of Judge McBryde's own colleagues have concluded that there is a reasonable doubt of Judge

McBryde's ability to be impartial arising from an attorney's testifying against him"). The appearance is that these statements made in the *Bremers, Avilez–Reyes,* and *Anderson* opinions were based on extrajudicial subjective beliefs of Judge DeMoss, who was serving as a member of the Judicial Council when the December 31, 1997, and February 9, 1998, Judicial Council orders were formulated and issued. The *Waskom* and *Bremers* opinions are further tainted by the participation of Circuit Judges Politz and Benavides in their issuance. In addition to his involvement described in footnote 1, *supra* at 3, Judge Politz participated in all activities that led to the Judicial Council orders and then signed them. Judge Benavides' role in the proceedings against the undersigned was the same as Judge DeMoss'.

*kom,* and *Burgos.* Rather, the facts in the instant action are more akin to the *Vadner* and *Trevino* facts.

A distinction between the instant action and *Bremers* is found in the fact that, here, the assistant United States attorney handling the prosecution of Marshall made clear on the record of the hearing on the motion to recuse that the government opposed the motion and was urging the court to deny it—quite a contrast with AUSA Barta's assertion, quoted in *Bremers,* at the hearing on Bremers' motion that the government might well stipulate error if the motion to recuse filed by Bremers were to be denied. That distinction, as well as the others that are apparent upon a comparison of the facts of this case with the factual recitations made in the *Bremers* opinion, are sufficient to cause *Bremers* not to be authoritative here even if it otherwise had precedential effect.

 Another reason why *Anderson* and *Avilez–Reyes* and their progeny should not bear on the outcome of Marshall's motion is that they simply are not Fifth Circuit precedents binding on this court. Circuit Judge Jones was quite correct when she said in her dissents in *Anderson* and *Avilez–Reyes* that her "colleagues' interpretation of § 455(a) in these cases conflicts with our precedent...." *Anderson,* 160 F.3d at 235 (Jones, J., dissenting); *Avilez–Reyes,* 160 F.3d at 260 (Jones, J., dissenting). Rather than focusing on the presumed attitude of the undersigned toward a party to the litigation, the majority in *Anderson* and *Avilez–Reyes* focused exclusively on this judge's presumed attitude toward the attorney. This directly contravenes the holding of the Fifth Circuit in *Davis.* 517 F.2d at 1052. Thus, the rule that "[i]n this circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court," *Matter of Dyke,* 943 F.2d 1435, 1442 (5th Cir.1991), comes into play. Under that rule, "where holdings in two ... opinions are in conflict, the earlier opinion controls and constitutes the bind-

ing precedent in the circuit." *Boyd v. Puckett,* 905 F.2d 895, 897 (5th Cir.), *cert. denied,* 498 U.S. 988, 111 S.Ct. 526, 112 L.Ed.2d 537 (1990). There has been no *en banc* reconsideration of the holding in *Davis,* nor has there been a superseding contrary decision of the Supreme Court. Therefore, *Davis* was the controlling Fifth Circuit precedent when this court denied the motions to recuse in *Anderson, Avilez– Reyes, Waskom, Burgos,* and *Bremers,* and it continues to be.

### *ORDER*

For the reasons given above,

The court ORDERS that Marshall's motion to recuse be, and is hereby, denied.